## <u>NOTICE OF REMOVAL</u>

Ronald R. Roundy, Esq. / CA SBN 276879
LAW OFFICE OF RONALD R. ROUNDY
rroundy@guidingcounsel.com
Attorney for Defendants SHAFER REAL ESTATE, INC. and DREW HAISLEY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE US DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| NEIGHBORHOODS.COM LLC d/b/a 55 PLACES,<br><br>Plaintiff,<br><br><br>v.<br><br><br><br>SHAFER REAL ESTATE, INC. and DREW HAISLEY,<br><br>Defendants. | Case No. 1:26-cv-01339<br><br><br>Judge None Assigned |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §1441 and 28 U.S.C. §1446, Defendants SHAFER REAL ESTATE, INC. and DREW HAISLEY hereby remove the above-captioned action to this Court from the IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT.

1. SHAFER REAL ESTATE, INC. and DREW HAISLEY are the Defendants in the civil action brought on February 5, 2026, in the IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS MUNICIPAL DEPARTMENT, FIRST DISTRICT.

**Grounds for Removal**

2. This case is removable under 28 U.S.C. §1441(a) because this is an action of a civil nature in which the District Courts of the United States have been given original jurisdiction under 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between plaintiff and defendants in this action

1

because Plaintiff is Illinois and Defendants are California. Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. §1441(b) because none of the parties in interest properly joined and served as defendant in this action is a citizen of the State of Illinois, in which this action was brought.

3. Plaintiff's Complaint was served on or about January 15, 2025. On January 8, 2026, Plaintiff filed a First Amended Complaint. This action became removable at that time because First Amended Complaint pleads new damages now totaling $60,954.25, and requests attorney fees in a sum to be determined which will likely put total damages well above $75,000. This notice of removal is filed within 30 days of receipt of the First Amended Complaint, and within one year after commencement of the action and therefore timely under 28 U.S.C. §1446 (b)(3).

4. Pursuant to 28 U.S.C. §1446(a), Defendants attach this notice the following papers, which are all of the process, pleadings, and orders served on it prior to removal of this action:

(a) Complaint, attached hereto as Exhibit 1

(b) First Amended Complaint, attached hereto as Exhibit 2.

Dated: February 5, 2026

Respectfully submitted,

/s/
_____
Ronald R. Roundy, Esq., appearing PRO HAC VICE (CA Bar No. 276879)

LAW OFFICE OF RONALD R. ROUNDY
6520 Lonetree Blvd, Suite 2031, Rocklin, California 95765
Telephone: (916) 818-1838
Facsimile: (916) 818-1838
Email: rroundy@guidingcounsel.com
Attorneys for SHAFER REAL ESTATE, INC.

EXHIBIT "1"

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 1102
System Generated Hearing Date: 2/20/2026 9:30 AM
Location: Court Room 1102
Judge: Barlow, Maria M

FILED
1/8/2026 10:09 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20241132994
Courtroom, 1102
36080286

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT, FIRST DISTRICT**

| | |
|---|---|
| NEIGHBORHOODS.COM LLC d/b/a 55 PLACES, an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> DREW HAISLEY and SHAFER REAL ESTATE, INC. <br><br> Defendants. | NO.   20241132994 <br><br> **AD DANNUM: $60,954.25** <br> **PLUS INTEREST AND COSTS** |

**FIRST AMENDED COMPLAINT**

Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES, an Illinois limited liability company, ("55 PLACES"), by and through its attorneys DONNELLY LAW LLC, complaining of Defendants, DREW HAISLEY, individually, and SHAFER REAL ESTATE, INC., a California corporation, states as follows:

**COUNT I**
**BREACH OF CONTRACT**

1.      Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES ("PLAINTIFF") is now and was at all times relevant hereto an Illinois limited liability company engaged in the business of providing real estate web services with its principal place of business located at 600 W Fulton Street #701, Chicago, IL 60661.

2.      Defendant, DREW HAISLEY ("AGENT"), upon information and belief, is now and was at all times relevant hereto an individual with a principal residence in the state of California.  AGENT has submitted to the jurisdiction of this Court by agreement as set forth herein.

3.      Defendant, SHAFER REAL ESTATE, INC., a California corporation, ("BROKER"), upon information and belief, is now and was at all times relevant hereto a real estate

1

FILED DATE: 1/8/2026 10:09 AM   20241132994

brokerage firm licensed by the state of California. BROKER has submitted to the jurisdiction of this Court by agreement as set forth herein.

4. At all times relevant, AGENT was a real estate agent affiliated with and under the management of BROKER.

5. PLAINTIFF, AGENT, and BROKER are parties to a series of valid and binding Referral Agreements dated November 5, 2013, January 10, 2017 and August 6, 2018 under which AGENT and BROKER were obligated to pay certain referral fees to PLAINTIFF at the conclusion of certain real estate transactions as set forth in the Agreements. (A copy of the Agreements are attached hereto and incorporated herein as Group Exhibit A).

6. Pursuant to the Agreements, PLAINTIFF was to provide client referrals to AGENT and BROKER and, in exchange, AGENT and BROKER agreed to pay to PLAINTIFF at the conclusion of a transaction a referral fee as set forth in the Agreements. (See Exhibit A)

7. Pursuant to the Agreements, PLAINTIFF fulfilled its obligations under the Agreements when it provided the AGENT and BROKER with referral(s).

8. Defendants AGENT and BROKER however have failed to pay the agreed upon referral fees for the transactions and the amounts as set forth in Exhibit B.

9. As of the date of this First Amended Complaint, and after accounting for all just credits, there is due and owing to PLAINTIFF by Defendants AGENT and BROKER the amount of $60,954.25.

10. Pursuant to the Agreements, the PLAINTIFF, as prevailing party, is entitled to recover all costs of collection from Defendants, including attorneys fees. (See Exhibit A, ¶10).

11. Pursuant to the Agreements, any litigation resulting from the Agreements "shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing the Agreements,

the parties submit themselves to the jurisdiction of such courts." (See Exhibit A, ¶10)(emphasis added).

**WHEREFORE**, Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES, demands judgment against the Defendants, DREW HAISLEY, individually, and SHAFER REAL ESTATE, INC., a California corporation, jointly and severally, in the amount of $60,954.25 plus interest, costs, and attorneys fees associated with this action.

Dated: December 5, 2025

Respectfully submitted,

**NEIGHBORHOODS.COM, LLC
dba 55 PLACES**

By: /s/ *Craig E. Donnelly*

Its attorney

Craig E. Donnelly
**DONNELLY LAW LLC**
1100 Jorie Boulevard, Suite 255
Oak Brook, IL 60523
630-601-7170
CED@DonnellyLawLLC.com
Cook County Atty No. 60373

3

FILED DATE: 1/8/2026 10:09 AM   20241132994

EXHIBIT A

EXHIBIT A

EXHIBIT A

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80B5-3C03FE2C0950

FILED DATE: 1/8/2026 10:09 AM   20241132994

# 55PLACES COM®

# **REFERRAL AGREEMENT**

## **REFERRING BROKER INFORMATION**

Company: Neighborhoods.com, LLC dba 55 Places

Address:   600 W. Fulton Street #701

City, State Zip:  Chicago, IL 60661

Company Lic#: 477.013455 (Illinois)

Phone:   (773) 278-5500

Fax:   (888) 370-2806

Email:   Broker@55places.com

Tax ID #:   68-0653419

## **RECEIVING AGENT/BROKER INFORMATION**

Agent Name: Drew Haisley

Agent Phone: 925.482.4556

Agent Email: drewhaisley@frontier.com

Agent RE License(1) #: CA #00997350
(list state & license #)

Agent RE License(2) #: _____
(applicable if licensed in multiple states)

Agent MLS Name(1): BAREIS

Agent MLS ID(1)#: C336706

Agent MLS Name(2): BAREIS
(applicable if a member of multiple MLS's)

Agent MLS ID(2)#: _____
(applicable if a member of multiple MLS's)

Brokerage Name: Shafer Real Estate

Brokerage License #: 01390213

Brokerage Address: 121 Montezuma St.

City, State Zip: Rio Vista, CA 94571

Designated Broker Name: Diane Shafer

Designated Broker Phone: 707.328.5277

Designated Broker Email: dianeshafer@frontiernet.net

Brokerage Office MLS ID#: C319988

Brokerage Office Tax ID#: 80-0180507

1

Broker Initials _DS_   Agent Initials _DH_

*Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80BE-3C03FE2C0950

## 55PLACES.COM®

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "the Company"), and the Receiving Broker identified above, a(n) ____California____ (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

**Referral Fee:** Referral fee = 30% x (Commission + Bonuses - Fees)

The Company has developed informational and interactive websites commonly known as Neighborhoods.com, 55places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods, subdivisions and buildings.

The Company desires to appoint Agent as a participant in the Partner Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.**

**Acceptance by the Company:**

By: *John Bray*
Authorized Sales Manager

By: *Bill Ness*
William Ness - Managing Broker

Date: 8/7/2018

**Acceptance by Agent and Agent's Broker:**

*Drew Haisley*
(Agent's signature)

*Diane Shafer*
(Agent's Designated Broker's signature)

Date: 8/6/2018

Broker Initials _DS_    Agent Initials _DH_

2

*Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CE0-4D16-80BF-3C02FE2C9959

**55PLACES⁄COM**®

## General Terms and Conditions

1) <u>Definition of Terms</u>.
   a) Associated Agents – Agent's teammates and fellow real estate agents and brokers (named on Exhibit 1 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by the Company to respond to, communicate with and/or provide other real estate and consultative services to Referrals.
   b) Featured Agent – An Agent who may be featured on a Website as the designated contact person for any Lead who wishes to inquire about specific Neighborhoods or Properties.
   c) Huddle – A proprietary online customer relationship management program used to track communication with Leads and record Transactions.
   d) Lead – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Neighborhoods, and (iii) (A) submits a request for additional information pertaining to Properties or Neighborhoods, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, (C) requests to be contacted by Agent, and/or (D) contacts Agent directly as a result of finding Agent on a Website, even if the initial contact attempt is not derived from the Websites.
   e) Neighborhoods – Residential real estate developments, communities, subdivisions, areas and buildings on the Websites.
   f) Properties – Real estate for sale or rent, which may be displayed on the Websites.
   g) Referral – Any Lead that the Company transmits to Agent or the act of the Company referring any Lead to Agent.
   h) Territory – The geographic area, zip code(s) or Neighborhoods for which Agent may receive referrals.
   i) Transaction – a closed real estate transaction or an executed rental agreement resulting from a Referral.

2) <u>Engagement</u>.
   a) The Company hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program. This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.
   b) As a participant in the Program, Agent will receive Referrals from the Company that were derived from a Website for potential clients interested in purchasing, selling or leasing real estate. The Company reserves the right to refer the same Lead to multiple Agents.
   c) Upon mutual agreement between Agent and the Company, Agent may be displayed as a Featured Agent for one or more Neighborhoods or Properties on the Websites.
   d) In consideration for the foregoing appointment into the Program, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.
   e) Agent acknowledges that the Company, in its sole discretion, may alter the Territory, Neighborhoods and/or Properties for which Agent is displayed as a Featured Agent. Agent further acknowledges that the Company may add multiple agents to a specified territory and rotate who is displayed as a Featured Agent on its Websites.
   f) Agent acknowledges that the Company, in its sole discretion, may alter the frequency for which an Agent receives referrals. The determination for the frequency is based on factors that include, but are not limited to, Agent's conversion rate of Leads to Transactions, timeliness of response to Referrals, Agent's capacity to service the Leads, timely and consistent use of Huddle, reviews of Agent's performance by past Referrals, and such other matters as the Company deems relevant in its sole discretion.
   g) Agent acknowledges that the Company, in its sole discretion, may periodically test the Agent's response and follow-up to Referrals by registering a fictional name and contact information and monitor Agent's response.

3) <u>Term and Termination</u>.
   a) This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.
   b) Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by the Company to Agent's Broker) via email, with proof of transmission upon request.

4) <u>Referral Fee</u>.
   a) Agent's Broker agrees to pay the Company a referral fee (the "Referral Fee") equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Associated Agents or Agent's Company for all Referrals that result in Transactions. The Referral Fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, Referral Fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that the Company reserves the right to conduct audits of documentation of customer communication and sales records in Huddle, as well as local public records, for the purpose of ensuring that all Transactions with the Company's Referrals are properly reported. The Company also reserves the right to periodically survey Referrals regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.
   b) A Referral Fee shall be due and payable hereunder for any Referral to Agent that results in a Transaction so long as the Referral occurs during the term of this agreement, whether or not the Transaction occurs during the term of this agreement and whether or not such Transaction is completed by Agent, Associated Agents or a third party agent to whom Agent referred the Lead (with notice to and the written consent of the Company).
   c) Agent and Agent's Broker understand and agree that Referral Fees will be due to the Company for each subsequent Transaction (including all buyer, seller/listing and rental Transactions) that arises from the same Referral, whether or not the Transaction occurs during the term of this agreement or thereafter.
   d) The Referral Fee is due and payable for all Referrals that result in Transactions regardless of whether or not the Neighborhood in which the Transaction occurred or the Property for which the transaction occurred is displayed on the Websites.
   e) In the event that the Agent has a pre-existing relationship with any Referrals sent from the Company to Agent, no Referral Fee shall be due from Agent or Agent's Broker to the Company provided that (i) Agent was actively working with the Lead prior to receiving the Referral from the Company, and (ii) Agent, within 48 hours after the Company forwards the Referral to Agent, provides



3        Broker Initials \_\_\_\_   Agent Initials \_\_\_\_       *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM   20241132994

FILED DATE: 1/8/2026 10:09 AM   20241132994



documentary evidence thereof to the Company verifying that Agent corresponded with the Lead in the ninety (90) day period prior to the submission of the Referral to Agent via email, phone or personal interaction. Mass marketing, such as email blasts, newsletters, or MLS drip campaigns, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with the Lead within the last 90 days.

f) Agent will provide the Company with a copy of each executed Settlement Statement or Closing Statement or executed lease by uploading a copy of such document in PDF format into the sales record in Huddle and Agent's Broker shall submit Referral Fee to the Company within five (5) days of closing.

5) <u>Representations, Duties and Responsibilities of the Company</u>.
   a) The Company is an Illinois licensed real estate brokerage with a current and valid license.
   b) The Company will display information about Neighborhoods and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed appropriate to effectively market the Neighborhoods and the Properties.
   c) The Company will forward via email Leads that inquire about a Neighborhood or Property to Agent for which the Agent is displayed as a Featured Agent on a Website.

6) <u>Representations, Duties and Responsibilities of Agent</u>.
   a) Agent is a licensed real estate salesperson or broker with a current and valid license in the state(s) in which Agent practices.
   b) Agent or Agent's Broker will alert the Company of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license within three (3) business days.
   c) Agent shall comply with all applicable real estate licensing laws and abide by all terms of the Fair Housing Act.
   d) Agent is a member in good standing of his or her local Multiple Listing Service (MLS) and will maintain his or her membership throughout the term of this Agreement.
   e) Agent's products and services do not violate any applicable laws or regulations.
   f) All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as an offering of service by the Company.
   g) Agent will provide and update as necessary his or her own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background. The Company may prevent an Agent from being displayed as a Featured Agent for a Property or Neighborhood until an acceptable photograph is provided by Agent.
   h) In the event that Agent provides the Company with photos, videos or virtual tours for Neighborhoods displayed on the Websites, Agent hereby grants the Company a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds the Company harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to the Company may, at the discretion of the Company, remain on the Websites after termination of this Agreement.
   i) Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and

consultative services to Leads on behalf of Agent. All Associated Agents shall sign Exhibit 1 of this Agreement, return a signed copy to the Company and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and the Associated Agent's Broker is required to pay the Referral Fee to the Company in the event of a Transaction derived from a Referral. Notwithstanding the foregoing, Agent and Agent's Broker are fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of the Company.

j) Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from the Company. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker or real estate representative without notice and written consent from the Company; provided, however, that Agent may register Leads with home-builder sales representatives in the Neighborhoods in which Agent deems the Lead may be interested in purchasing a home without the written consent of the Company.

k) Agent acknowledges that a Lead's contact information as provided on a Website is the property of the Company, and that the Company may market to any Lead before, during, or after any contact with the Agent.

l) Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on Exhibit 1 of this agreement without the prior written consent of the Company. If a Lead requests information regarding a Neighborhood or Property outside the area the Agent is willing to service, the Agent will immediately notify the Company and the Lead will be referred only by the Company to another agent. No compensation will be due to the notifying Agent unless otherwise approved in writing by the Company.

m) Agent will document all communications with all Leads via Huddle, whether any such Lead is being contacted directly by Agent or an Associated Agent. Agent will make all reasonable efforts to respond to all Leads via phone within fifteen (15) minutes of the transmission of Lead information from the Company to Agent, except in situations where a Referral is received before 8am or after 8pm or the Lead specifically requests not to be contacted via phone. Agent must notify Company if there is a situation whereby Agent is unable or unwilling to respond to a Lead within a timely manner, such as when agent is on vacation. Agent agrees to contact all Leads by phone and email and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other reason, Agent will ensure that one of the Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Referrals from the Company to Agent.

n) The Company requires documentation about interactions via phone calls, emails and personal interactions with the Lead via Huddle about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. The Company may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help the Company learn the status of the referred Leads.

o) The Company reserves the right to communicate with all Leads on behalf of the Company and on behalf of the Agent.

4    Broker Initials _____   Agent Initials _____    *Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80BF-3C02FE2C9959



FILED DATE: 1/8/2026 10:09 AM  20241132994

p) Agent will notify the Company of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within twenty-four (24) hours thereof by entering the sale information in Huddle. Thereafter, Agent will notify the Company by updating Huddle with any changes to the status of the Contract as and when Agent becomes aware of such changes and will provide the Company a status update within twenty-four (24) hours after the Company requests same.

q) Agent will notify the Company of any cancelled Contract within twenty-four (24) hours of becoming aware of such cancellation by updating the sale record in Huddle. Such notice shall include documentation of cancellation. If any lead who cancels a Contract later consummates a Transaction with Agent or Associated Agent, a Referral Fee will be due and payable to the Company hereunder.

r) Agent recognizes that the Company has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to the Company which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referral Fees due to the Company. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of the Company. Agent acknowledges that neighborhoods.com, the neighborhoods.com logo, 55places.com, and the 55places.com logo are trademarks and the sole property of the Company and are not to be used without the express written consent of the Company. Any use is considered a license only, revocable by the Company at any time.

7) Limitation of Liability
a) Agent may not seek, and in no event will the Company be liable to Agent for, any indirect, special, incidental, consequential or punitive damages, however characterized, to the fullest extent the law permits this disclaimer and even if the Company has been advised of the possibility of these damages. In no event will the Company's cumulative aggregate liability to Agent, under any theory and irrespective of fault or negligence, exceed $100.

8) Indemnification
a) To the maximum extent permitted by law, Agent shall indemnify and hold the Company and its affiliates, subsidiaries, representatives, agents, managers, and employees harmless from and against any liabilities, losses, damages, claims, demands, actions and rights of action (including reasonable attorneys' and paralegals' fees and costs) related to (a) the actions of Agent outside the scope of this Agreement, (b) the gross negligence or willful misconduct of Agent, (c) any third-party claims alleging a breach of the third party's intellectual property rights as a result of Agent's actions or omissions, (d) Agent's breach of any representation, warranty or obligation stated in this Agreement, and (e) any action brought against Company by any government agency due to the actions or inactions of Agent. Agent shall fully cooperate as reasonably required in the defense of any claim.

9) Remedies
a) Agent agrees that if the Company seeks to enforce this Agreement by injunction, specific performance, or other equitable relief, the Company will not be required to post a bond or prove actual damages.

10) Miscellaneous.
a) This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b) This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c) This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d) This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e) If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f) Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



5                    Broker Initials _____ Agent Initials _____                    *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM  20241132994



**Exhibit 1: Associated Agents**

Agent and Agent's Broker hereby acknowledge, and the Company hereby accepts, that the following Associated Agents are permitted to interact with Referrals received from the Company and its Websites. The following Associated Agents acknowledge they have read this agreement in its entirety and will abide by all terms set forth in this agreement.

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

_____    _____    _____
Associated Agent (Print)             Associated Agent (Signature)                 Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                    MLS ID#

**Acceptance by the Company:**                    **Acceptance by Agent's Broker:**

DocuSigned by:                                     DocuSigned by:
By: _John Bray_____                    _Diane Shafer_____
Authorized Sales Manager                          (Designated Broker's signature)
    939FA3867AE5487...                                 724B4D5FC6694C2...

Broker Initials _DS_    Agent Initials _DH_

6                                                                          *Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80BF-9C02FE2C9959



**Exhibit 2: 55places.com Affiliated Website**

The Company wishes to assist visitors to 55places.com by providing links from 55places.com to an Affiliated Website created by the Company on behalf of the Agent with Property information generated via an Internet Data Exchange (IDX) feed from Agent's Multiple Listing Service (MLS). The purpose of the Affiliated Website is to direct visitors to an IDX compliant website that displays Properties for sale in Neighborhoods that are displayed on 55places.com within the Agent's Territory. The Affiliated Website created by the Company will be of a design and layout that is similar in nature to 55places.com. The Company agrees to design, build, host and manage the Affiliated Website in accordance with all IDX requirements set forth by Agent's MLS.

The Company agrees to pay all fees for IDX directly to the MLS or reimburse the Agent or Agent's Broker for costs incurred to set up and/or maintain the Affiliated Website. The Company further agrees to purchase and retain ownership of the Uniform Resource Locator (URL) for the Affiliated Website, except in instances where the Agent's MLS specifically requires ownership of the URL by Agent or Agent's Broker.

Agent agrees to allow the Company to build and maintain an Affiliated Website with a URL of http://www.[agentname]55places.com (or similar). Agent or Agent's Broker will provide access to an IDX or RETS data feed and will facilitate approval of Affiliated Website by their Local MLS board.

Agent acknowledges that Referrals obtained through the Affiliated Website are subject to the terms of this Agreement. Agent further acknowledges that Agent has the authority to dictate to the Company the design, layout and content of the Affiliated Website but that the Company may cancel this agreement if the Agent's requests do not match the website template created by the Company.

Upon termination of this Agreement, the Company will remove the contents of this website within 60 days.

**Acceptance by the Company:**

By: _John Bray_
Authorized Sales Manager
939FA3867AE5487...

By: _[signature]_
William Ness - Managing Broker

Date: 8/7/2018

**Acceptance by Agent and Agent's Broker:**

_Drew Haisley_
(Agent's signature)

_Diane Shafer_
(Agent's Designated Broker's signature)

Date: 8/6/2018

Broker Initials _DS_  Agent Initials _DH_  *Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80BF-3C02FE2C9959



### Exhibit 3: Closing and Referral Check Payment Instructions

Please follow these instructions to close a sale and send a referral fee payment.

**Make checks payable to: Neighborhoods.com\***
**Include in the memo field on the check, in this order:**
　　**Sales Record ID number, Property address, and Client's name.**

**For USPS mail:**
**Please send checks to:**
Neighborhoods.com
PO Box 6772
Carol Stream, IL 60197-6772

**For FedEx/UPS mail:**
**Please send checks to:**
Neighborhoods.com
c/o Wintrust Information Technology
Lockbox Services, Client 654
160 Hansen Court
Wood Dale, IL 60191

*\*55places.com is owned and operated by Neighborhoods.com, LLC – an Illinois Licensed Broker*

When a sale closes:
1. Update the Sale record in Huddle.
    a. Change Sale status to "Closed."
    b. Verify the Closing Date and update Huddle if necessary.
    c. Update the Price, Commission Pct., Bonus and Fee fields so that the Calculated Referral Amount is equal to the amount of the check sent to Neighborhoods.com. If the actual referral check does not match the Referral Amount, please explain in the Agent Notes section.

2. Update Payment Sent Date field in Huddle.

3. Attach a PDF of the Closing Disclosure Form or Settlement Statement from the Title Company to the sale record in Huddle. To attach a document to the sale record, click the green "Choose a file to upload" button, select your file, then click "Upload Chosen File to Server."
    a. **Note, do not send a paper copy of the Closing Disclosure Form or Settlement Statement. We do not keep paper copies on file and shred them upon arrival.**

4. Use the Agent Notes section if there is something that is important to share with us regarding the sale, closing, or referral check. For example, if "Other Community" was chosen for the community field, use the Agent Notes field to let 55places.com or Neighborhoods.com know the actual name of the community.

5. If the closing date changes from what you entered at the time of sale, change the Estimated Closing Date field. There should never be a sale in Pending or Contingent status with a closing date prior to the current date.

If you have questions, please contact the Accounting Department at 773-278-5500 or email at
accounting@neighborhoods.com.



8　　　　　　　　　Broker Initials _____　Agent Initials _____　　　*Version 7.1.18*

DocuSign Envelope ID: 106A0E52-0080-48FF-984A-6B8D480D5CFF

FILED DATE: 1/8/2026 10:09 AM 20241132994

# 55PLACES COM

# REFERRAL AGREEMENT

| **REFERRING BROKER INFORMATION** | **RECEIVING AGENT/BROKER INFORMATION** | |
|---|---|---|
| Company: Neighborhoods.com, LLC dba 55 Places | Agent Name: | Drew Haisley |
| Address: 1525 W Homer Street, Suite 302 | Agent's Company: | Shafer Real Estate |
| City, State Zip: Chicago, IL 60642 | Address: | 121 Montezuma St. |
| Phone: (773) 278-5500 | City, State Zip: | Rio Vista |
| Fax: (888) 370-2806 | Agent Phone: | 9254824556 |
| Email: Broker@55places.com | Agent Fax: | 7073751888 |
| Tax ID #: 68-0653419 | Agent Email: | drewhaisley@frontier.com |
| Company Lic#: 477.013455 (Illinois) | Agent License #: | 00997350 |
| | Agent MLS ID #: | C336706 |
| | Broker Name: | Diane Shafer |
| | Broker Phone: | 7073285277 |
| | Broker Email: | dianeshafer@frontiernet.net |
| | Broker License #: | 01390213 |
| | Office MLS ID #: | 7CSHAFER |
| | Tax ID #: | 80-0180507 |

Referral Fee:  Referral fee = 30% x (Commission + Bonuses - Fees)

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "the Company"), and the Receiving Broker identified above, a(n) __CALIFORNIA__ (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

The Company has developed informational and interactive websites commonly known as Neighborhoods.com, 55places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods, subdivisions and buildings.

The Company desires to appoint Agent as a participant in the Partner Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.**

**Acceptance by the Company:**

By: *John Bray*
Authorized Sales Manager

By: *Bill Ness*
William Ness - Managing Broker

Date: 1/10/2017

**Acceptance by Agent and Agent's Broker:**

*Drew Haisley*
(Agent's signature)

*Diane Shafer*
(Agent's Broker's signature)

Date: 1/10/2017

1

*Version 1.1.17*

FILED DATE: 1/8/2026 10:09 AM    20241132994

## General Terms and Conditions

1)  Definition of Terms.
    a)  Lead – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Neighborhoods, and (A) submits a request for additional information pertaining to Properties or Neighborhoods, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, (C) Requests to be contacted by Agent, and/or (D) contacts Agent directly as a result of finding Agent on a Website, even if the initial contact attempt is not derived from the Websites.
    b)  Referral – Any Lead that the Company transmits to Agent or the act of the company referring any Lead to Agent.
    c)  Neighborhoods – Residential real estate developments, communities, subdivisions, areas and buildings on the Websites.
    d)  Properties – Real estate for sale or rent, which may be displayed on the Websites.
    e)  Transaction – A Lead referral via a Website, via telephone or by any other means from the Company to Referral Agent and/or Associated Agents that results in a closed real estate transaction or in an executed rental agreement.
    f)  Associated Agents – Agent's teammates and fellow real estate agents and brokers (named on Exhibit 1 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by the Company to respond to, communicate with and/or provide other real estate and consultative services to Referrals.
    g)  Featured Agent – An Agent who is featured on a Website as the designated contact person for any Lead who wishes to inquire about specific Neighborhoods or Properties.
    h)  Territory – The geographic area, zip code(s) or Neighborhoods for which Agent is displayed as a Featured Agent.
    i)  Huddle – Proprietary customer relationship management program used to track communication with Leads and record Transactions.
2)  Engagement.
    a)  The Company hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program.   This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.
    b)  As a participant in the Program, Agent will receive Referrals from the Company that were derived from a Website for potential clients interested in purchasing, selling or leasing real estate.
    c)  Upon mutual agreement between Agent and the Company, Agent may be displayed as a Featured Agent for one or more Neighborhoods or Properties on the Websites.
    d)  In consideration for the foregoing appointment into the Program, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.
    e)  Agent acknowledges that the Company, in its sole discretion, may alter the Territory, Neighborhoods and/or Properties for which Agent is displayed as a Featured Agent. Agent further acknowledges that the Company may add multiple agents to a specified territory and rotate who is displayed as a Featured Agent on its Websites.
    f)  Agent acknowledges that the Company, in its sole discretion, may alter the frequency for which an Agent is displayed as a Featured Agent for a Neighborhood or Property on the Websites. The determination for the frequency an Agent is displayed as a Featured Agent is based on factors that include, but are not limited to, Agent's conversion rate of Leads to Transactions, timeliness of response to Referrals, Agent's capacity to service the Leads, timely and consistent use of Huddle, reviews of Agent's performance by past Referrals, and such other matters as the Company deems relevant in its sole discretion.
    g)  Agent acknowledges that the Company, in its sole discretion, may periodically test the Agent's response and follow-up to Referrals by registering a fictional name and contact information and monitor Agent's response.
3)  Term and Termination.
    a)  This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.
    b)  Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by the Company to Agent's Broker) via email, with proof of transmission upon request.
4)  Referral Fee.
    a)  Agent's Broker agrees to pay the Company a referral fee equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Associated Agents or Agent's Company for all Referrals that result in Transactions. The referral fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, referral fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that the Company reserves the right to conduct audits of documentation of customer communication and sales records in Huddle, as well as local public records, for the purpose of ensuring that all Transactions with the Company's Referrals are properly reported. The Company also reserves the right to periodically survey Referrals regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.
    b)  A referral fee shall be due and payable hereunder for any Referral to Agent that results in a Transaction, whether such Transaction is from Agent, Associated Agents or a third party agent to whom Agent referred the Lead (with notice to and the written consent of the Company).
    c)  Agent and Agent's Broker acknowledge this stipulation requires that multiple Referral Fees will be due to the Company for subsequent Transactions that happen with the same Referral during the term of this agreement and for any Transaction that opens escrow within two (2) years after the termination of this agreement. This includes all buyer, seller/listing and rental Transactions.
    d)  The referral fee is due and payable for all Referrals that result in Transactions regardless of whether or not the Neighborhood in which the Transaction occurred or the Property for which the transaction occurred is displayed on the Websites.
    e)  In the event that the Agent has a pre-existing relationship with any Referrals sent from the Company to Agent, no referral fee shall be due from Agent or Agent's Broker to the Company provided that (i) Agent was actively working with the Lead prior to receiving the Referral from the Company, and (ii) Agent, within 48 hours after the



2                                    Broker Initials _____  Agent Initials _____                          Version 1.1.17

Company forwards the Referral to Agent, provides documentary evidence thereof to the Company verifying that Agent corresponded with the Lead in the ninety (90) day period prior to the submission of the Referral to Agent via email, phone or personal interaction. Mass marketing, such as email blasts, newsletters, or MLS drip campaigns, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with the Lead within the last 90 days.

f) Agent will provide the Company with a copy of each executed Settlement Statement or Closing Statement or executed lease by uploading a copy of such document in PDF format into the sales record in Huddle and Agent's Broker shall submit referral fee to the Company within 5 days of closing.

5) <u>Representations, Duties and Responsibilities of the Company</u>.

a) The Company is an Illinois licensed real estate brokerage with a current and valid license.

b) The Company will display information about Neighborhoods and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed appropriate to effectively market the Neighborhoods and the Properties.

c) The Company will forward via email Leads that inquire about a Neighborhood or Property to Agent for which the Agent is displayed as a Featured Agent on a Website.

6) <u>Representations, Duties and Responsibilities of Agent</u>.

a) Agent is a licensed real estate salesperson or broker with a current and valid license in the state in which Agent practices.

b) Agent or Agent's Broker will alert the Company of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license within three (3) business days.

c) Agent shall comply with all applicable real estate licensing laws and abide by all terms of the Fair Housing Act.

d) Agent is a member in good standing of their local Multiple Listing Service (MLS) and will maintain their membership throughout the term of this Agreement.

e) Agent's products and services do not violate any applicable laws or regulations.

f) All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as an offering of service by the Company.

g) Agent will provide and update as necessary their own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background. The Company may prevent an Agent from being displayed as a Featured Agent for a Property or Neighborhood until an acceptable photograph is provided by Agent.

h) In the event that Agent provides the Company with photos, videos or virtual tours for Neighborhoods displayed on the Websites, Agent hereby grants the Company a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds the Company harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to the Company may, at the discretion of the Company, remain on the Websites after termination of this Agreement.

i) Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and consultative services to Leads on behalf of Agent. All Associated Agents shall sign Exhibit 1 of this Agreement,

return a signed copy to the Company and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and the Associated Agent's Broker is required to pay the Referral Fee to the Company in the event of a Transaction derived from a Referral. Notwithstanding the foregoing, Agent and Agent's Broker are fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of the Company.

j) Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from the Company. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker or real estate representative without notice to and written consent from the Company; provided, however, that Agent may register Leads with home-builder sales representatives in the Neighborhoods in which Agent deems the Lead may be interested in purchasing a home without the written consent of the Company.

k) Agent acknowledges that a Lead's contact information as provided on the website is the property of the Company, and that the Company may market to any Lead before, during, or after any contact with the Agent.

l) Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on Exhibit 1 of this agreement without the prior written consent of the Company. If a Lead requests information regarding a Neighborhood or Property outside the area the Agent is willing to service, the Agent will immediately notify the Company and the Lead will be referred only by the Company to another agent. No compensation will be due to the notifying Agent.

m) Agent will document all communications with all Leads via Huddle, an online customer relationship management tool, whether any such Lead is being contacted directly by Agent or an Associated Agent. Agent will make all reasonable efforts to respond to all Leads via phone within one (1) hour of the transmission of Lead information from the Company to Agent, except in situations where a Referral is received after 8pm or the Lead specifically requests not to be contacted via phone. Agent must notify Company if there is a situation whereby Agent is unable or unwilling to respond to a Lead within a timely manner, such as when agent is on vacation. Agent agrees to contact all Leads by phone and email and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other reason, Agent will ensure that one of the Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Referrals from the Company to Agent.

n) The Company requires documentation about interactions via phone calls, emails and personal interactions with the Lead via Huddle about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. The Company may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help the Company learn the status of the referred Leads.

o) Agent will notify the Company of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within twenty-four (24) hours thereof by entering the sale information in Huddle. Thereafter, Agent will notify the Company by updating Huddle with any changes to the status of the Contract as and when Agent becomes aware of such changes and

3                                        Broker Initials _____   Agent Initials _____                    *Version 1.1.17*

FILED DATE: 1/8/2026 10:09 AM   20241132994

will provide the Company a status update within twenty-four (24) hours after the Company requests same.

p)   Agent will notify the Company of any cancelled Contract within twenty-four (24) hours of becoming aware of such cancellation by updating the sale record in Huddle. Such notice shall include documentation of cancellation. If any lead who cancels a Contract later consummates a Transaction with Agent or Associated Agent, a Referral Fee will be due and payable to the Company hereunder.

q)   Agent recognizes that the Company has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to the Company which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referral Fees due to the Company. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of the Company. Agent acknowledges that neighborhoods.com, the neighborhoods.com logo, 55places.com, and the 55places.com logo are trademarks and the sole property of the Company and are not to be used without the express written consent of the Company. Any use is considered a license only, revocable by the Company at any time.

7)   Limitation of Liability

a)   Agent may not seek, and in no event will the Company be liable to Agent for, any indirect, special, incidental, consequential or punitive damages, however characterized, to the fullest extent the law permits this disclaimer and even if the Company has been advised of the possibility of these damages. In no event will the Company's cumulative aggregate liability, under any theory and irrespective of fault or negligence, exceed $100.

8)   Indemnification

a)   To the maximum extent permitted by law, Agent shall indemnify and hold the Company and its affiliates, subsidiaries, representatives, agents, managers, and employees harmless from and against any liabilities, losses, damages, claims, demands, actions and rights of action (including reasonable attorneys' and paralegals' fees and costs) related to (a) the actions of Agent outside the scope of this Agreement, (b) the gross negligence or willful misconduct of Agent, (c) any third-party claims alleging a breach of the third party's intellectual property rights as a result of Agent's actions or omissions, (d) Agent's breach of any representation, warranty or obligation stated in this Agreement, and (e) any action brought against Company by any government agency due to the actions or inactions of Agent. Agent shall fully cooperate as reasonably required in the defense of any claim.

9)   Remedies

a)   Agent agrees that if the Company seeks to enforce this Agreement by injunction, specific performance, or other equitable relief, the Company will not be required to post a bond or prove actual damages.

10)   Miscellaneous.

a)   This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b)   This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c)   This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d)   This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e)   If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f)   Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



4                    Broker Initials ⎰DS⎰_____  Agent Initials ⎰DH⎰_____          *Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6A8D480D5CFE

**Exhibit 1: Associated Agents**

Agent and Agent's Broker hereby acknowledge and the Company hereby accepts that the following Associated Agents are permitted to interact with Referrals received from the Company and its Websites. The following Associated Agents acknowledge they have read this agreement in its entirety and will abide by all terms set forth in this agreement.

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

_____ _____

Associated Agent (Signature) Date

_____

Associated Agent (Print)

**Acceptance by the Company:**

By: *John Bray*

Authorized Sales Manager

5

*Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6648D480D5CFF

FILED DATE: 1/8/2026 10:09 AM   20241132994

**Exhibit 2: 55places.com Agents**

**Affiliated Website**

The Company wishes to assist visitors to 55places.com by providing links from 55places.com to an Affiliated Website created by the Company on behalf of the Agent with Property information generated via an Internet Data Exchange (IDX) feed from Agent's Multiple Listing Service (MLS). The purpose of the Affiliated Website is to direct visitors to an IDX compliant website that displays Properties for sale in Neighborhoods that are displayed on 55places.com within the Agent's Territory. The Affiliated Website created by the Company will be of a design and layout that is similar in nature to 55places.com. The Company agrees to design, build, host and manage the Affiliated Website in accordance with all IDX requirements set forth by Agent's MLS.

The Company agrees to pay all fees for IDX directly to the MLS or reimburse the Agent or Agent's Broker for costs incurred to set up and/or maintain the Affiliated Website. The Company further agrees to purchase and retain ownership of the Uniform Resource Locator (URL) for the Affiliated Website, except in instances where the Agent's MLS specifically requires ownership of the URL by Agent or Agent's Broker.

Agent agrees to allow the Company to build and maintain an Affiliated Website with a URL of http://www.[agentname]55places.com (or similar). Agent or Agent's Broker will provide access to an IDX or RETS data feed and will facilitate approval of Affiliated Website by their Local MLS board.

Agent acknowledges that Referrals obtained through the Affiliated Website are subject to the terms of this Agreement. Agent further acknowledges that Agent has the authority to dictate to the Company the design, layout and content of the Affiliated Website but that the Company may cancel this agreement if the Agent's requests do not match the website template created by the Company.

Upon termination of this Agreement, the Company will remove the contents of this website within 60 days.

**Sales Reports**

Agent agrees to supply the Company with comprehensive sales reports from the local MLS board each quarter, by the end of the first month following each quarter end, showing all transactions that took place in each Neighborhood for which the Agent has been displayed as a Featured Agent, including subject address, sales price, sale date, listing agent, and selling agent.

**Acceptance by the Company:**

By: _John Bray_____
Authorized Sales Manager

By: _[signature]_____
William Ness - Managing Broker

Date: _1/10/2017_____

**Acceptance by Agent and Agent's Broker:**

_Drew Haisley_____
(Agent's signature)

_Diane Shafer_____
(Agent's Broker's signature)

Date: _1/10/2017_____

*Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6F8D480D5CFE



**55places.com Partner Agent Pledge**

We are excited to have you part of the 55places.com Partner Agent Referral Program. This program is not suited for every real estate agent, but we have elected to have you join our program because we are confident you will handle our referrals with care and effectiveness that produces satisfied customers and positive results for both you and 55places.com.

We believe in finding the most committed Partner Agents to join our program because we know that selecting agents who are motivated, persistent and eager means we will achieve mutual success.

As fellow real estate brokers, we believe that our Partner Agents should only pay for referrals that result in a transaction, which is why 55places.com is compensated exclusively via referral fees and not by charging up-front or monthly advertising fees. We are willing to make you a member of our program and provide you with referrals as long as you agree that while you are a member of our program you are willing to commit to the practices we have outlined below.

I, _____Drew Haisley_____, commit to the 55places.com Partner Agent Pledge
    (print your name)
and will make every effort to abide by the best practices outlined below:

Initials:

_DH_____ I will commit to a timely phone response for all referrals sent to me. I agree to make every reasonable effort to call every lead within one hour, but ideally within minutes of when they submit their request. I will follow up my initial phone call with an email in the same timeframe.

_DH_____ I will use Huddle to log follow-up and correspondence with all referrals. I agree to make every effort to update Huddle the same day that the follow-up occurred, and no later than 24 hours from lead inquiry.

_DH_____ I agree to enter all transactions – including buyer, seller and rental contracts – for any lead I receive from 55places.com within 24 hours of the contract being executed. This includes subsequent sales for the same lead, including a listing and a buying transaction, as well as future transactions for the life of the agreement between you and 55places.com.

_DH_____ I will maintain in-depth knowledge of the neighborhoods for which I am displayed as a real estate expert on 55places.com. I will make every effort to provide detailed information and answer questions regarding neighborhoods and properties to the referrals provided to me by 55places.com.

_DH_____ I am responsible for follow up with the referrals I receive and I will not forward or re-refer leads provided to me from 55places.com to any other agent except the Associated Agents specified in the Referral Agreement. I also acknowledge that I will inform 55places.com if one of the referrals they provided me is interested in purchasing or selling a home in a location for which I am unwilling or unable to provide service.

_DH_____ I will act with professionalism, diligence and care for all referrals provided to me by 55places.com. I will act ethically and provide great customer service to referrals from 55places.com and I will not act in a manner that tarnishes the 55places.com brand.

_DH_____ I acknowledge that the conversion rate of my leads to transactions is a highly important metric and I will make all reasonable efforts to ensure my conversion rate is at the highest possible level.

DocuSigned by:

_Drew Haisley_____          1/10/2017
                                                _____
Agent Signature                                 Date

*55places.com is owned and operated by Neighborhoods.com, LLC – an Illinois Licensed Broker*



# 55 PLACES, LLC AGENT REFERRAL AGREEMENT

| REFERRING BROKER INFORMATION | RECEIVING AGENT/BROKER INFORMATION |
|---|---|

**REFERRING BROKER INFORMATION**

Managing Broker: William Ness

Sponsoring Broker: 55 Places, LLC

Company: 55 Places, LLC

Address: 1525 W Homer, Suite 302

Chicago, IL 60642

Phone: (773) 278-5500

Fax: (888) 370-2806

Email: Bill.Ness@ 5Places.com

Tax ID #: 68-0653419

Lic. # /state: 475.117159 (Illinois)

**RECEIVING AGENT/BROKER INFORMATION**

Agent: Draw Haisly Van Laanen

Agent's Broker: Diane Shafer

Agent's Company: Shafer Real Estate

Address: 121 Montezuma St

Rio Vista CA 94571

Agent Phone: (925) 482 4556

Agent Fax: (707) 375 1888

Agent Email: drewhaislye frontier.com

Agent RE License #: 00997350

Broker Phone: (707) 328 5277

Broker Email: dianeshafere frontiernet.net

Broker RE License #: 01390213

Company Tax ID: 80-0180507

Referral Fee:  Referral fee = 30% x (Commission + Bonuses)

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "55 Places"), and the Receiving Broker identified above, a(n) _____California_____ (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

55 Places has developed an informational and interactive website commonly known as 55Places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods and subdivisions that appeal to older adults and senior-aged individuals.

55 Places desires to appoint Agent as a participant in the 55 Places Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.**

**Acceptance by 55 Places:**

55 Places LLC, an Illinois
Limited Liability Company

By: _____
William G. Ness, Managing Broker

Date: __11/5__, 20_13_

**Acceptance by Agent and Agent's Broker:**

_Drew Haisly Van Laanen_
(Agent's signature)

_Diane Shafer_
(Agent's Broker's signature)

Date: _____, 20___

FILED DATE: 1/8/2026 10:09 AM 20241132994

## General Terms and Conditions

1) **Definition of Terms.**
   a) **Lead** – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Communities, and (A) submits a request for additional information pertaining to Properties or Communities, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, and/or (C) contacts Agent directly as a result of finding Agent on a Website.
   b) **Affiliated Website** – A website created by or for 55 Places used for the purpose of displaying property listings, or other related information.
   c) **Referral Agent** – Any agent who is authorized to be a part of the 55 Places Agent Referral Program.
   d) **Communities** – Residential real estate developments, neighborhoods, subdivisions, areas, retirement communities, active adult communities and age-restricted communities displayed on the Websites.
   e) **Properties** – Real estate for sale or rent, which may be displayed on the Websites.
   f) **Transaction** – A Lead referral via a Website, via telephone or by any other means from 55 Places to Referral Agent and/or Associated Agents that results in a closed real estate transaction or in an executed rental agreement.
   g) **Associated Agents** – Agent's teammates and fellow real estate agents and brokers (named on page 4 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by 55 Places to respond to, communicate with and/or provide other real estate and consultative services to Leads.
   h) **Agent Portal** – Proprietary customer relationship management program used to track communication with leads and prospects and record Transactions.

2) **Engagement.**
   a) 55 Places hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program. This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.
   b) As a Referral Agent, Agent will receive Lead information from a website for potential clients interested in purchasing, selling or leasing real estate.
   c) Upon mutual agreement between Agent and 55 Places, Agent may be displayed as a community expert for one or more Communities on the Websites.
   d) In consideration for the foregoing appointment as a Partner Agent, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.
   e) Agent acknowledges that 55 Places, in its sole discretion, may remove or add Communities or alter the Partner Agent displayed on a Community from time to time, rotate and/or remove a Referral Agent displayed on a Community.
   f) Agent acknowledges that 55 Places, in its sole discretion, may periodically test the Agent's response and follow-up to Leads by registering a fictional name and contact information.

3) **Term and Termination.**
   a) This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.
   b) Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by 55 Places to Agent's Broker) via facsimile or email, with proof of transmission upon request.

4) **Referral Fee.**
   a) Agent's Broker agrees to pay 55 Places a referral fee equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Agent's Partner or Agent's Company for all Leads that result in Transactions. The referral fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, referral fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that 55 Places reserves the right to conduct audits of documentation of customer communication and sales records in the Agent Portal, as well as local public records, for the purpose of ensuring that all Transactions with 55 Places' Leads are properly reported. 55 Places also reserves the right to periodically survey Leads regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.
   b) A referral fee shall be due and payable hereunder for any Lead to Agent that results in a Transaction, whether such Transaction is from Agent, Agent's Partner or a third party agent to whom Agent referred the Lead (with notice to and the written consent of 55 Places).
   c) The referral fee is due and payable for all Leads that result in Transactions that open escrow during the term of this Agreement and for a period of two (2) years after the termination of this Agreement.
   d) The referral fee is due and payable for all Leads that result in Transactions regardless of whether or not the Community in which the Transaction occurred is displayed on the Websites.
   e) No referral fee shall be due and payable with regard to any Transaction with any Lead that was, at the time the Lead was submitted to Agent from 55 Places, already a client or a pre-existing prospect of Agent if (i) Agent was actively working with the Lead prior to receiving the Lead from 55 Places, and (ii) Agent, within 48 hours after 55 Places forwards the Lead to Agent, provides documentary evidence thereof to 55 Places verifying that Agent corresponded with Lead in the ninety (90) day period prior to the submission of the Lead to Agent via email, phone or personal interaction. Mass marketing, such as email blasts or newsletters, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with a Lead within the last 90 days.
   f) Agent will provide 55 Places with a copy of each executed HUD-1 Settlement Statement, Closing Statement (if no HUD-1 Settlement Statement was issued in connection with the Transaction) or executed lease by uploading a copy of such document in .pdf format into the Agent Portal and shall submit referral fee to 55 Places within 5 days of closing.

5) **Representations, Duties and Responsibilities of 55 Places.**
   a) 55 Places is an Illinois licensed real estate brokerage with a current and valid license.
   b) 55 Places will display information about Communities and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed

Broker Initials  Agent Initials

FILED DATE: 1/8/2026 10:09 AM   20241132994

appropriate to effectively market the Communities and the Properties.

   c) 55 Places will forward to Agent Leads that inquire about a Community or Property with which the Referral Agent is displayed as a Community expert on a Website at the time of inquiry.

6) Representations, Duties and Responsibilities of Agent.

   a) Agent is a licensed real estate salesperson or broker with a current and valid license in the state in which agent practices.

   b) Agent will promptly alert 55 Places of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license.

   c) Agent shall comply with all applicable real estate licensing laws.

   d) Agent is a member in good standing of their local Multiple Listing Service (MLS) and will maintain their membership throughout the term of this Agreement.

   e) Agent's products and services do not violate any applicable laws or regulations.

   f) All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as 55 Places' offering of service.

   g) Agent will provide and update as necessary their own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background.

   h) Agent agrees to allow 55 Places to build and maintain an Affiliated Website known as http://www.[agentname]55places.com (or similar), using the Agent's likeness and contact information, for the purpose of displaying homes listed for sale on Affiliated Websites. Agent or Agent's Broker will provide access to an Internet Data Exchange (IDX) or RETS data feed, including any associated costs or setup fees necessary to obtain feed. Agent and/or Agent's Broker will facilitate approval of Affiliated Website by their Local MLS board. Agent acknowledges that Leads obtained through such Affiliated Website(s) are subject to the term of this Agreement. Agent further acknowledges that http://www.[agentname]55places.com is owned and maintained by 55 Places. 55 Places agrees to operate Affiliated Website according to any rules or guidelines required by local MLS. 55 Places retains all rights to modify the content displayed on http://www.[agentname]55places.com during and after the terms of this Agreement. Upon termination of this Agreement, 55 Places will remove the contents of this website within 60 days but will still maintain ownership rights to the URL and all intellectual property rights derived therefrom.

   i) Agent will cooperate with 55 Places as necessary with regard to information pertaining to Communities for which Agent is displayed as a Community expert, as follows:

      (1) General information about the Communities, including address, phone numbers, builders, number of homes and dates of construction.

      (2) Real estate information for the Communities, including types of homes, home price ranges, home square footage ranges and Association fees for all home types in the Communities.

      (3) A list and accurate description of all amenities within the Communities.

      (4) A list of all clubs, organizations, classes and events offered within the Communities.

      (5) Area and local information pertaining to other amenities, lifestyle options and other information about the area surrounding the Communities.

   j) At the request of 55 Places, Agent shall provide photographs, video and/or virtual tours of the Communities for which Agent is displayed as a

Community expert including amenities, clubhouses, homes, grounds, entry monuments and/or signage and other items that are deemed necessary or desirable to convey an accurate portrayal of the Communities to Website visitors. Agent agrees to provide 55 Places with such photographs, video and/or virtual tours as allowed by Communities and/or builders adhering to the following guidelines.

      i) All photographs, video and/or virtual tours supplied from Agent to 55 Places shall be proprietary to Agent and not copied from another trademarked source or websites except with the express written permission of such other sources or websites.

      ii) All photographs supplied from Agent to 55 Places must be no smaller than 640 pixels wide by 426 pixels tall.

      iii) Agent shall provide updates to 55 Places as information about Communities changes and/or as requested by 55 Places.

   k) Agent hereby grants 55 Places a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds 55 Places harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to 55 Places may, at the discretion of 55 Places, remain on the Websites after termination of this Agreement.

   l) Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and consultative services to Leads on behalf of Agent. All Associated Agents shall sign a copy of this Agreement, return a signed copy to 55 Places and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and are required to pay the Referral Fee to 55 Places in the event of a Transaction. Notwithstanding the foregoing, Agent is fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of 55 Places.

   m) Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from 55 Places. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker, real estate representative or 55 Places Referral Agent without notice to and written consent from 55 Places; provided, however, that Agent may register Leads with home-builder sales representatives in the Communities in which Agent deems the Lead may be interested without the written consent of 55 Places.

   n) Agent acknowledges that a Lead's contact information as provided on the website is owned by 55 Places, and that the company may market to any Lead before, during, or after any contact with the Agent.

   o) Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on page 4 of this agreement without the prior written consent of 55 Places. If a Lead requests information regarding a community outside the Agent's primary business area, the Agent will immediately notify 55 Places and the Lead will be referred only by 55 Places to another agent. No compensation will be due to the notifying Referral Agent.

   p) Agent will document all communications with all Leads via an online Customer Relationship Management tool (Agent Portal), whether any such Lead is being handled directly by Agent or an Associated Agent. In addition, Agent will respond to all Leads within 24 hours of registration by phone and email, and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other

3   Broker Initials _____   Agent Initials _____

FILED DATE: 1/8/2026 10:09 AM 20241132994

reason, Agent will ensure that one of the above named Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Leads from 55 Places to Agent.

q) 55 Places requires documentation about interactions via phone calls, emails and personal interactions with the Lead via the Agent Portal about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. 55 Places may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help 55 Places learn the status of the referred Leads.

r) Agent will notify 55 Places of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within forty-eight (48) hours thereof by entering the sale information in the Agent Portal. Thereafter, Agent will notify 55 Places by updating the Agent Portal with any changes to the status of the Contract as and when Agent becomes aware of such changes and will provide 55 Places a status update within forty eight (48) hours after 55 Places requests same.

s) Agent will notify 55 Places of any cancelled Contract within forty eight (48) hours of becoming aware of such cancellation by updating the sale record in the Agent Portal. Such notice shall include documentation of cancellation. If any Lead who cancels a Contract later consummates a Transaction with Agent or Agent's Partners, a Referral Fee will be due and payable to 55 Places hereunder.

t) Agent recognizes that 55 Places has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to 55 Places which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that, upon termination of Agent's engagement, Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referrals due 55 Places. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of 55 Places. Agent acknowledges that 55 Places, 55places.com, and the 55places.com logo are trademarks and the sole property of 55 Places and are not to be used without the express written consent of 55 Places. Any use is considered a license only, revocable by 55 Places at any time.

u) Agent and Agent's Broker agree to supply 55 Places with comprehensive sales reports from the local MLS board each quarter, by the end of the first month following each quarter end, showing all transactions that took place in each community for which the Agent has been displayed as a Community expert, including subject address, sales price, sale date, listing agent, and selling agent.

Associated Agents

_____

_____

_____

7) Miscellaneous.
a) This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b) This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c) This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d) This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e) If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f) Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



4    Broker Initials _____    Agent Initials _____

FILED DATE: 1/8/2026 10:09 AM   20241132994

EXHIBIT B

EXHIBIT B

EXHIBIT B

FILED DATE: 1/8/2026 10:09 AM  20241132994



## ESTIMATE

Neighborhoods.com LLC

600 W Fulton St, Ste 700
Chicago, IL 60661
(773) 278-5500

Drew Haisley/Diane Shafer - Shafer Real Estate
121 Montezuma St.
Rio Vista, CA  94571

| Estimate Date: | 5/2/2024 |
|---|---|
| Terms: | Due upon receipt |
| Due Date: | 5/2/2024 |
| Amount: | $        21,563.50 |

| Agent name | Client name | Sale information | Calculated Referral Fee* |
|---|---|---|---|
| Drew Haisley | Gene And Deidre Ko | 701 Brookside Ln, Rio Vista, CA  94571 | $    3,342.50 |
| Drew Haisley | Claudia See | 740 Turnberry Ter, Rio Vista, CA  94571 | $    2,187.50 |
| Drew Haisley | William McKenna | 621 Edgewood Dr, Rio Vista, CA  94571 | $    3,171.88 |
| Drew Haisley | Jack Nelson | 363 Clubhouse Dr, Rio Vista, CA  94571 | $    2,625.00 |
| Drew Haisley | Linda L. Wiggins | 367 Longspur Dr, Rio Vista, CA  94571 | $    3,806.25 |
| Drew Haisley | Carolyn Ulrich | 796 Turnberry Ter, Rio Vista, CA  94571 | $    2,842.88 |
| Drew Haisley | Brian Connell | 1010 Sunset Lndg, Rio Vista, CA  94571 | $    3,587.50 |
| Total | | | $    21,563.50 |
| Payments | | | $            - |
| Amount Due: | | | $    21,563.50 |

Please make checks payable to Neighborhoods.com with invoice number and client's name or property address on the memo field of your payment.

Please send a check to:
Neighborhoods.com
P.O Box 771470
St. Louis, MO 63177-9816
United States

**\*Please note\*:**
**Referral payment amount is based on a 2.5% commission rate with a 35% referral fee.  This amount is only an estimate and can change upon receipt and verification of final ALTA.**

ACH / Wire Transfer To:
Bank name: ██████████████
Account Name: Neighborhoods.com LLC
ABA / Routing No.: ████████

██████████████████

Neighborhoods.com LLC

600 W Fulton St, Ste 700
Chicago, IL 60661
(773) 278-5500

**ESTIMATE**



| Brokerage name | Shafer Real Estate |
|---|---|
| Street Address | 121 Montezuma Street |
| City, State, Zip | Rio Vista, CA, 94571 |

| Invoice Date: | 11/5/25 |
|---|---|
| Terms: | Due upon receipt |
| Due Date: | 11/5/25 |
| Amount: | $ 39,390.75 |

| Agent name | Client name | Sale information | Calculated Referral Fee* |
|---|---|---|---|
| Drew Haisley | Robert V. Hardy Jr. | 200 Oakridge Way, Rio Vista, CA. 94571 | $4,025.00 |
| Diane Shafer | Janell M. Baum | 2142 Saint Andrews Dr., Rio Vista, CA. 94571 | $3,850.00 |
| Drew Haisley | Karen E. Sahmel | 251 Shearwater Dr., Rio Vista, CA. 94571 | $3,587.50 |
| Diane Shafer | Crenshaw Family Trust, Kristina Crenshaw | 309 Fairbanks Dr., Rio Vista, CA. 94571 | $2,493.75 |
| Drew Haisley | Bruce Anthony Munson | 326 Crystal Downs Dr., Rio Vista, CA. 94571 | $4,812.50 |
| Drew Haisley | Lydia Carriere | 340 Cedar Ridge Dr., Rio Vista, CA. 94571 | $3,778.25 |
| Drew Haisley | William Frand | 348 Silver Ridge Dr., Rio Vista, CA. 94571 | $4,156.25 |
| Drew Haisley | Stephen E. Gaertner | 349 Forest Highland Dr., Rio Vista, CA. 94571 | $4,165.00 |
| Drew Haisley | Karen C. Nash | 488 Crescent Dr., Rio Vista, CA. 94571 | $4,943.75 |
| Diane Shafer | William Onesta, Carolyn Onesta | 960 Saint Andrews Dr., Rio Vista, CA. 94571 | $3,578.75 |

| | | | |
|---|---|---|---|
| Total: | | $ | 39,390.75 |
| Payments | | $ | - |
| Amount Due: | | $ | 39,390.75 |

Please make checks payable to Neighborhoods.com with invoice number and client's name or property address on the memo field of your payment.

Please send a check to:
Neighborhoods.com
P.O Box 771470
St. Louis, MO 63177-9816
United States

**\*Please note\*:**
**Referral payment amount is based on a 2.5% commission rate with a 35% referral fee. This amount is only an estimate and can change upon receipt and verification of final ALTA.**

ACH / Wire Transfer To:
Bank name: ███████████
Account Name: Neighborhoods.com LLC
ABA / Routing No.: ████████
Account No: ██████

FILED DATE: 1/8/2026 10:09 AM   20241132994

EXHIBIT "2"

EXHIBIT "3"

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber1>>
Judge: Courtroom, 1102
System Generated Hearing Date: 2/20/2026 9:30 AM
Location: Court Room 1102
Judge: Barlow, Maria M

FILED
1/8/2026 10:09 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20241132994
Courtroom, 1102
36080286

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT, FIRST DISTRICT**

NEIGHBORHOODS.COM LLC d/b/a
55 PLACES, an Illinois limited liability
company,

          Plaintiff,

v.

DREW HAISLEY and SHAFER REAL
ESTATE, INC.

          Defendants.

NO.   20241132994

**AD DANNUM: $60,954.25**
**PLUS INTEREST AND COSTS**

**FIRST AMENDED COMPLAINT**

Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES, an Illinois limited liability company, ("55 PLACES"), by and through its attorneys DONNELLY LAW LLC, complaining of Defendants, DREW HAISLEY, individually, and SHAFER REAL ESTATE, INC., a California corporation, states as follows:

**COUNT I**
**BREACH OF CONTRACT**

1.    Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES ("PLAINTIFF") is now and was at all times relevant hereto an Illinois limited liability company engaged in the business of providing real estate web services with its principal place of business located at 600 W Fulton Street #701, Chicago, IL 60661.

2.    Defendant, DREW HAISLEY ("AGENT"), upon information and belief, is now and was at all times relevant hereto an individual with a principal residence in the state of California. AGENT has submitted to the jurisdiction of this Court by agreement as set forth herein.

3.    Defendant, SHAFER REAL ESTATE, INC., a California corporation, ("BROKER"), upon information and belief, is now and was at all times relevant hereto a real estate

1

brokerage firm licensed by the state of California. BROKER has submitted to the jurisdiction of this Court by agreement as set forth herein.

4. At all times relevant, AGENT was a real estate agent affiliated with and under the management of BROKER.

5. PLAINTIFF, AGENT, and BROKER are parties to a series of valid and binding Referral Agreements dated November 5, 2013, January 10, 2017 and August 6, 2018 under which AGENT and BROKER were obligated to pay certain referral fees to PLAINTIFF at the conclusion of certain real estate transactions as set forth in the Agreements. (A copy of the Agreements are attached hereto and incorporated herein as Group Exhibit A).

6. Pursuant to the Agreements, PLAINTIFF was to provide client referrals to AGENT and BROKER and, in exchange, AGENT and BROKER agreed to pay to PLAINTIFF at the conclusion of a transaction a referral fee as set forth in the Agreements. (See Exhibit A)

7. Pursuant to the Agreements, PLAINTIFF fulfilled its obligations under the Agreements when it provided the AGENT and BROKER with referral(s).

8. Defendants AGENT and BROKER however have failed to pay the agreed upon referral fees for the transactions and the amounts as set forth in Exhibit B.

9. As of the date of this First Amended Complaint, and after accounting for all just credits, there is due and owing to PLAINTIFF by Defendants AGENT and BROKER the amount of $60,954.25.

10. Pursuant to the Agreements, the PLAINTIFF, as prevailing party, is entitled to recover all costs of collection from Defendants, including attorneys fees. (See Exhibit A, ¶10).

11. Pursuant to the Agreements, any litigation resulting from the Agreements "shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing the Agreements,

the parties submit themselves to the jurisdiction of such courts." (See Exhibit A, ¶10)(emphasis added).

**WHEREFORE**, Plaintiff, NEIGHBORHOODS.COM, LLC d/b/a 55 PLACES, demands judgment against the Defendants, DREW HAISLEY, individually, and SHAFER REAL ESTATE, INC., a California corporation, jointly and severally, in the amount of $60,954.25 plus interest, costs, and attorneys fees associated with this action.

Dated: December 5, 2025                                  Respectfully submitted,

**NEIGHBORHOODS.COM, LLC**
**dba 55 PLACES**

By: /s/ *Craig E. Donnelly*
                    Its attorney

Craig E. Donnelly
**DONNELLY LAW LLC**
1100 Jorie Boulevard, Suite 255
Oak Brook, IL 60523
630-601-7170
CED@DonnellyLawLLC.com
Cook County Atty No. 60373

3

FILED DATE: 1/8/2026 10:09 AM   20241132994

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

DocuSign Envelope ID: DFEA842C 6CE0 4D16 80BF 3C02FF2C9959

# 55PLACES COM®

# **REFERRAL AGREEMENT**

## **REFERRING BROKER INFORMATION**

Company: Neighborhoods.com, LLC dba 55 Places

Address:     600 W. Fulton Street #701

City, State Zip:  Chicago, IL 60661

Company Lic#: 477.013455 (Illinois)

Phone:     (773) 278-5500

Fax:     (888) 370-2806

Email:     Broker@55places.com

Tax ID #:     68-0653419

## **RECEIVING AGENT/BROKER INFORMATION**

Agent Name: Drew Haisley

Agent Phone: 925.482.4556

Agent Email: drewhaisley@frontier.com

Agent RE License(1) #: CA #00997350
(list state & license #)

Agent RE License(2) #: _____
(applicable if licensed in multiple states)

Agent MLS Name(1): BAREIS

Agent MLS ID(1)#: C336706

Agent MLS Name(2): BAREIS
(applicable if a member of multiple MLS's)

Agent MLS ID(2)#: _____
(applicable if a member of multiple MLS's)

Brokerage Name: Shafer Real Estate

Brokerage License #: 01390213

Brokerage Address: 121 Montezuma St.

City, State Zip: Rio Vista, CA 94571

Designated Broker Name: Diane Shafer

Designated Broker Phone: 707.328.5277

Designated Broker Email: dianeshafer@frontiernet.net

Brokerage Office MLS ID#: C319988

Brokerage Office Tax ID#: 80-0180507

Broker Initials  Agent Initials     *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM   20241132994

## 55PLACES COM®

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "the Company"), and the Receiving Broker identified above, a(n) _____California_____ (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

Referral Fee:   Referral fee = 30% x (Commission + Bonuses - Fees)

The Company has developed informational and interactive websites commonly known as Neighborhoods.com, 55places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods, subdivisions and buildings.

The Company desires to appoint Agent as a participant in the Partner Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.**

**Acceptance by the Company:**

By: *John Bray*
Authorized Sales Manager

By: *Bill Ness*
William Ness - Managing Broker

Date: 8/7/2018

**Acceptance by Agent and Agent's Broker:**

*Drew Haisley*
(Agent's signature)

*Diane Shafer*
(Agent's Designated Broker's signature)

Date: 8/6/2018

2          Broker Initials ____   Agent Initials ____          *Version 7.1.18*

DocuSign Envelope ID: DFEA842C-6CF0-4D16-80BF-3C02FE2C9959

FILED DATE: 1/8/2026 10:09 AM   20241132994

## 55PLACES✓COM®

## General Terms and Conditions

1) Definition of Terms.
   a) Associated Agents – Agent's teammates and fellow real estate agents and brokers (named on Exhibit 1 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by the Company to respond to, communicate with and/or provide other real estate and consultative services to Referrals.
   b) Featured Agent – An Agent who may be featured on a Website as the designated contact person for any Lead who wishes to inquire about specific Neighborhoods or Properties.
   c) Huddle – A proprietary online customer relationship management program used to track communication with Leads and record Transactions.
   d) Lead – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Neighborhoods, and (iii) (A) submits a request for additional information pertaining to Properties or Neighborhoods, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, (C) requests to be contacted by Agent, and/or (D) contacts Agent directly as a result of finding Agent on a Website, even if the initial contact attempt is not derived from the Websites.
   e) Neighborhoods – Residential real estate developments, communities, subdivisions, areas and buildings on the Websites.
   f) Properties – Real estate for sale or rent, which may be displayed on the Websites.
   g) Referral – Any Lead that the Company transmits to Agent or the act of the Company referring any Lead to Agent.
   h) Territory – The geographic area, zip code(s) or Neighborhoods for which Agent may receive referrals.
   i) Transaction – a closed real estate transaction or an executed rental agreement resulting from a Referral.

2) Engagement.
   a) The Company hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program.  This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.
   b) As a participant in the Program, Agent will receive Referrals from the Company that were derived from a Website for potential clients interested in purchasing, selling or leasing real estate. The Company reserves the right to refer the same Lead to multiple Agents.
   c) Upon mutual agreement between Agent and the Company, Agent may be displayed as a Featured Agent for one or more Neighborhoods or Properties on the Websites.
   d) In consideration for the foregoing appointment into the Program, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.
   e) Agent acknowledges that the Company, in its sole discretion, may alter the Territory, Neighborhoods and/or Properties for which Agent is displayed as a Featured Agent. Agent further acknowledges that the Company may add multiple agents to a specified territory and rotate who is displayed as a Featured Agent on its Websites.
   f) Agent acknowledges that the Company, in its sole discretion, may alter the frequency for which an Agent receives referrals. The determination for the frequency is based on factors that include, but are not limited to, Agent's conversion rate of Leads to Transactions, timeliness of response to Referrals, Agent's capacity to service the Leads, timely and consistent use of Huddle, reviews of Agent's performance by past Referrals, and such other matters as the Company deems relevant in its sole discretion.
   g) Agent acknowledges that the Company, in its sole discretion, may periodically test the Agent's response and follow-up to Referrals by registering a fictional name and contact information and monitor Agent's response.

3) Term and Termination.
   a) This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.
   b) Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by the Company to Agent's Broker) via email, with proof of transmission upon request.

4) Referral Fee.
   a) Agent's Broker agrees to pay the Company a referral fee (the "Referral Fee") equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Associated Agents or Agent's Company for all Referrals that result in Transactions. The Referral Fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, Referral Fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that the Company reserves the right to conduct audits of documentation of customer communication and sales records in Huddle, as well as local public records, for the purpose of ensuring that all Transactions with the Company's Referrals are properly reported. The Company also reserves the right to periodically survey Referrals regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.
   b) A Referral Fee shall be due and payable hereunder for any Referral to Agent that results in a Transaction so long as the Referral occurs during the term of this agreement, whether or not the Transaction occurs during the term of this agreement and whether or not such Transaction is completed by Agent, Associated Agents or a third party agent to whom Agent referred the Lead (with notice to and the written consent of the Company).
   c) Agent and Agent's Broker understand and agree that Referral Fees will be due to the Company for each subsequent Transaction (including all buyer, seller/listing and rental Transactions) that arises from the same Referral, whether or not the Transaction occurs during the term of this agreement or thereafter.
   d) The Referral Fee is due and payable for all Referrals that result in Transactions regardless of whether or not the Neighborhood in which the Transaction occurred or the Property for which the transaction occurred is displayed on the Websites.
   e) In the event that the Agent has a pre-existing relationship with any Referrals sent from the Company to Agent, no Referral Fee shall be due from Agent or Agent's Broker to the Company provided that (i) Agent was actively working with the Lead prior to receiving the Referral from the Company, and (ii) Agent, within 48 hours after the Company forwards the Referral to Agent, provides

3

Broker Initials  Agent Initials

*Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM 20241132994



documentary evidence thereof to the Company verifying that Agent corresponded with the Lead in the ninety (90) day period prior to the submission of the Referral to Agent via email, phone or personal interaction. Mass marketing, such as email blasts, newsletters, or MLS drip campaigns, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with the Lead within the last 90 days.

f)  Agent will provide the Company with a copy of each executed Settlement Statement or Closing Statement or executed lease by uploading a copy of such document in PDF format into the sales record in Huddle and Agent's Broker shall submit Referral Fee to the Company within five (5) days of closing.

5)  Representations, Duties and Responsibilities of the Company.
   a)  The Company is an Illinois licensed real estate brokerage with a current and valid license.
   b)  The Company will display information about Neighborhoods and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed appropriate to effectively market the Neighborhoods and the Properties.
   c)  The Company will forward via email Leads that inquire about a Neighborhood or Property to Agent for which the Agent is displayed as a Featured Agent on a Website.

6)  Representations, Duties and Responsibilities of Agent.
   a)  Agent is a licensed real estate salesperson or broker with a current and valid license in the state(s) in which Agent practices.
   b)  Agent or Agent's Broker will alert the Company of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license within three (3) business days.
   c)  Agent shall comply with all applicable real estate licensing laws and abide by all terms of the Fair Housing Act.
   d)  Agent is a member in good standing of his or her local Multiple Listing Service (MLS) and will maintain his or her membership throughout the term of this Agreement.
   e)  Agent's products and services do not violate any applicable laws or regulations.
   f)  All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as an offering of service by the Company.
   g)  Agent will provide and update as necessary his or her own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background. The Company may prevent an Agent from being displayed as a Featured Agent for a Property or Neighborhood until an acceptable photograph is provided by Agent.
   h)  In the event that Agent provides the Company with photos, videos or virtual tours for Neighborhoods displayed on the Websites, Agent hereby grants the Company a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds the Company harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to the Company may, at the discretion of the Company, remain on the Websites after termination of this Agreement.
   i)  Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and

consultative services to Leads on behalf of Agent. All Associated Agents shall sign Exhibit 1 of this Agreement, return a signed copy to the Company and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and the Associated Agent's Broker is required to pay the Referral Fee to the Company in the event of a Transaction derived from a Referral. Notwithstanding the foregoing, Agent and Agent's Broker are fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of the Company.

j)  Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from the Company. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker or real estate representative without notice and written consent from the Company; provided, however, that Agent may register Leads with home-builder sales representatives in the Neighborhoods in which Agent deems the Lead may be interested in purchasing a home without the written consent of the Company.

k)  Agent acknowledges that a Lead's contact information as provided on a Website is the property of the Company, and that the Company may market to any Lead before, during, or after any contact with the Agent.

l)  Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on Exhibit 1 of this agreement without the prior written consent of the Company. If a Lead requests information regarding a Neighborhood or Property outside the area the Agent is willing to service, the Agent will immediately notify the Company and the Lead will be referred only by the Company to another agent. No compensation will be due to the notifying Agent unless otherwise approved in writing by the Company.

m)  Agent will document all communications with all Leads via Huddle, whether any such Lead is being contacted directly by Agent or an Associated Agent. Agent will make all reasonable efforts to respond to all Leads via phone within fifteen (15) minutes of the transmission of Lead information from the Company to Agent, except in situations where a Referral is received before 8am or after 8pm or the Lead specifically requests not to be contacted via phone. Agent must notify Company if there is a situation whereby Agent is unable or unwilling to respond to a Lead within a timely manner, such as when agent is on vacation. Agent agrees to contact all Leads by phone and email and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other reason, Agent will ensure that one of the Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Referrals from the Company to Agent.

n)  The Company requires documentation about interactions via phone calls, emails and personal interactions with the Lead via Huddle about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. The Company may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help the Company learn the status of the referred Leads.

o)  The Company reserves the right to communicate with all Leads on behalf of the Company and on behalf of the Agent.

4                                    Broker Initials _____   Agent Initials _____                        *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM  20241132994



p) Agent will notify the Company of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within twenty-four (24) hours thereof by entering the sale information in Huddle. Thereafter, Agent will notify the Company by updating Huddle with any changes to the status of the Contract as and when Agent becomes aware of such changes and will provide the Company a status update within twenty-four (24) hours after the Company requests same.

q) Agent will notify the Company of any cancelled Contract within twenty-four (24) hours of becoming aware of such cancellation by updating the sale record in Huddle. Such notice shall include documentation of cancellation. If any lead who cancels a Contract later consummates a Transaction with Agent or Associated Agent, a Referral Fee will be due and payable to the Company hereunder.

r) Agent recognizes that the Company has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to the Company which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referral Fees due to the Company. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of the Company. Agent acknowledges that neighborhoods.com, the neighborhoods.com logo, 55places.com, and the 55places.com logo are trademarks and the sole property of the Company and are not to be used without the express written consent of the Company. Any use is considered a license only, revocable by the Company at any time.

7) Limitation of Liability

a) Agent may not seek, and in no event will the Company be liable to Agent for, any indirect, special, incidental, consequential or punitive damages, however characterized, to the fullest extent the law permits this disclaimer and even if the Company has been advised of the possibility of these damages. In no event will the Company's cumulative aggregate liability to Agent, under any theory and irrespective of fault or negligence, exceed $100.

8) Indemnification

a) To the maximum extent permitted by law, Agent shall indemnify and hold the Company and its affiliates, subsidiaries, representatives, agents, managers, and employees harmless from and against any liabilities, losses, damages, claims, demands, actions and rights of action (including reasonable attorneys' and paralegals' fees and costs) related to (a) the actions of Agent outside the scope of this Agreement, (b) the gross negligence or willful misconduct of Agent, (c) any third-party claims alleging a breach of the third party's intellectual property rights as a result of Agent's actions or omissions, (d) Agent's breach of any representation, warranty or obligation stated in this Agreement, and (e) any action brought against Company by any government agency due to the actions or inactions of Agent. Agent shall fully cooperate as reasonably required in the defense of any claim.

9) Remedies

a) Agent agrees that if the Company seeks to enforce this Agreement by injunction, specific performance, or other equitable relief, the Company will not be required to post a bond or prove actual damages.

10) Miscellaneous.

a) This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b) This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c) This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d) This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e) If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f) Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



5      Broker Initials _____ Agent Initials _____      *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM 20241132994



**Exhibit 1: Associated Agents**

Agent and Agent's Broker hereby acknowledge, and the Company hereby accepts, that the following Associated Agents are permitted to interact with Referrals received from the Company and its Websites. The following Associated Agents acknowledge they have read this agreement in its entirety and will abide by all terms set forth in this agreement.

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

_____    _____    _____
Associated Agent (Print)                Associated Agent (Signature)                       Date

_____    _____    _____
Associated Agent RE License #        Associated Agent MLS Name                        MLS ID#

**Acceptance by the Company:**                     **Acceptance by Agent's Broker:**

By: *John Bray*                                          *Diane Shafer*
Authorized Sales Manager                            (Designated Broker's signature)

Broker Initials *DS*    Agent Initials *DH*

6                                                                                        *Version 7.1.18*

FILED DATE: 1/8/2026 10:09 AM 20241132994



**Exhibit 2: 55places.com Affiliated Website**

The Company wishes to assist visitors to 55places.com by providing links from 55places.com to an Affiliated Website created by the Company on behalf of the Agent with Property information generated via an Internet Data Exchange (IDX) feed from Agent's Multiple Listing Service (MLS). The purpose of the Affiliated Website is to direct visitors to an IDX compliant website that displays Properties for sale in Neighborhoods that are displayed on 55places.com within the Agent's Territory. The Affiliated Website created by the Company will be of a design and layout that is similar in nature to 55places.com. The Company agrees to design, build, host and manage the Affiliated Website in accordance with all IDX requirements set forth by Agent's MLS.

The Company agrees to pay all fees for IDX directly to the MLS or reimburse the Agent or Agent's Broker for costs incurred to set up and/or maintain the Affiliated Website. The Company further agrees to purchase and retain ownership of the Uniform Resource Locator (URL) for the Affiliated Website, except in instances where the Agent's MLS specifically requires ownership of the URL by Agent or Agent's Broker.

Agent agrees to allow the Company to build and maintain an Affiliated Website with a URL of http://www.[agentname]55places.com (or similar). Agent or Agent's Broker will provide access to an IDX or RETS data feed and will facilitate approval of Affiliated Website by their Local MLS board.

Agent acknowledges that Referrals obtained through the Affiliated Website are subject to the terms of this Agreement. Agent further acknowledges that Agent has the authority to dictate to the Company the design, layout and content of the Affiliated Website but that the Company may cancel this agreement if the Agent's requests do not match the website template created by the Company.

Upon termination of this Agreement, the Company will remove the contents of this website within 60 days.

**Acceptance by the Company:**

By: _John Bray_
Authorized Sales Manager
939FA3867AE5487...

By: _[signature]_
William Ness - Managing Broker

Date: 8/7/2018

**Acceptance by Agent and Agent's Broker:**

_Drew Haisley_
(Agent's signature)

_Diane Shafer_
(Agent's Designated Broker's signature)

Date: 8/6/2018

Broker Initials _DS_    Agent Initials _DH_

*Version 7.1.18*



FILED DATE: 1/8/2026 10:09 AM   20241132994



## Exhibit 3: Closing and Referral Check Payment Instructions

Please follow these instructions to close a sale and send a referral fee payment.

**Make checks payable to: Neighborhoods.com\***
**Include in the memo field on the check, in this order:**
      **Sales Record ID number, Property address, and Client's name.**

| For USPS mail: | For FedEx/UPS mail: |
|---|---|
| **Please send checks to:** | **Please send checks to:** |
| Neighborhoods.com | Neighborhoods.com |
| PO Box 6772 | c/o Wintrust Information Technology |
| Carol Stream, IL 60197-6772 | Lockbox Services, Client 654 |
| | 160 Hansen Court |
| | Wood Dale, IL 60191 |

*\*55places.com is owned and operated by Neighborhoods.com, LLC – an Illinois Licensed Broker*

<u>When a sale closes:</u>
1. Update the Sale record in Huddle.
   a. Change Sale status to "Closed."
   b. Verify the Closing Date and update Huddle if necessary.
   c. Update the Price, Commission Pct., Bonus and Fee fields so that the Calculated Referral Amount is equal to the amount of the check sent to Neighborhoods.com. If the actual referral check does not match the Referral Amount, please explain in the Agent Notes section.

2. Update Payment Sent Date field in Huddle.

3. Attach a PDF of the Closing Disclosure Form or Settlement Statement from the Title Company to the sale record in Huddle. To attach a document to the sale record, click the green "Choose a file to upload" button, select your file, then click "Upload Chosen File to Server."
   a. **Note, do not send a paper copy of the Closing Disclosure Form or Settlement Statement. We do not keep paper copies on file and shred them upon arrival.**

4. Use the Agent Notes section if there is something that is important to share with us regarding the sale, closing, or referral check. For example, if "Other Community" was chosen for the community field, use the Agent Notes field to let 55places.com or Neighborhoods.com know the actual name of the community.

5. If the closing date changes from what you entered at the time of sale, change the Estimated Closing Date field. There should never be a sale in Pending or Contingent status with a closing date prior to the current date.

If you have questions, please contact the Accounting Department at 773-278-5500 or email at accounting@neighborhoods.com.



8        Broker Initials _____ Agent Initials _____        *Version 7.1.18*

DocuSign Envelope ID: 106A0E52-0080-48FF-984A-6648D480D5CFF

## 55PLACES.COM

# REFERRAL AGREEMENT

FILED DATE: 1/8/2026 10:09 AM   20241132994

| **REFERRING BROKER INFORMATION** | **RECEIVING AGENT/BROKER INFORMATION** | |
|---|---|---|
| Company: Neighborhoods.com, LLC dba 55 Places | Agent Name: | Drew Haisley |
| Address:       1525 W Homer Street, Suite 302 | Agent's Company: | Shafer Real Estate |
| City, State Zip:  Chicago, IL 60642 | Address: | 121 Montezuma St. |
| Phone:         (773) 278-5500 | City, State Zip: | Rio Vista |
| Fax:           (888) 370-2806 | Agent Phone: | 9254824556 |
| Email:         Broker@55places.com | Agent Fax: | 7073751888 |
| Tax ID #:      68-0653419 | Agent Email: | drewhaisley@frontier.com |
| Company Lic#:  477.013455 (Illinois) | Agent License #: | 00997350 |
| | Agent MLS ID #: | C336706 |
| | Broker Name: | Diane Shafer |
| | Broker Phone: | 7073285277 |
| | Broker Email: | dianeshafer@frontiernet.net |
| | Broker License #: | 01390213 |
| | Office MLS ID #: | 7CSHAFER |
| | Tax ID #: | 80-0180507 |

<u>Referral Fee</u>:   Referral fee = 30% x (Commission + Bonuses - Fees)

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "the Company"), and the Receiving Broker identified above, a(n) <u>CALIFORNIA</u> (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

The Company has developed informational and interactive websites commonly known as Neighborhoods.com, 55places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods, subdivisions and buildings.

The Company desires to appoint Agent as a participant in the Partner Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **<u>The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.</u>**

**Acceptance by the Company:**

By: *John Bray*
Authorized Sales Manager

By: *Bill Ness*
William Ness - Managing Broker

Date: 1/10/2017

**Acceptance by Agent and Agent's Broker:**

*Drew Haisley*
(Agent's signature)

*Diane Shafer*
(Agent's Broker's signature)

Date: 1/10/2017

1                                                                                                                 *Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6648D480D5CFE

FILED DATE: 1/8/2026 10:09 AM  20241132994

# General Terms and Conditions

1) Definition of Terms.

   a) Lead – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Neighborhoods, and (A) submits a request for additional information pertaining to Properties or Neighborhoods, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, (C) Requests to be contacted by Agent, and/or (D) contacts Agent directly as a result of finding Agent on a Website, even if the initial contact attempt is not derived from the Websites.

   b) Referral – Any Lead that the Company transmits to Agent or the act of the company referring any Lead to Agent.

   c) Neighborhoods – Residential real estate developments, communities, subdivisions, areas and buildings on the Websites.

   d) Properties – Real estate for sale or rent, which may be displayed on the Websites.

   e) Transaction – A Lead referral via a Website, via telephone or by any other means from the Company to Referral Agent and/or Associated Agents that results in a closed real estate transaction or in an executed rental agreement.

   f) Associated Agents – Agent's teammates and fellow real estate agents and brokers (named on Exhibit 1 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by the Company to respond to, communicate with and/or provide other real estate and consultative services to Referrals.

   g) Featured Agent – An Agent who is featured on a Website as the designated contact person for any Lead who wishes to inquire about specific Neighborhoods or Properties.

   h) Territory – The geographic area, zip code(s) or Neighborhoods for which Agent is displayed as a Featured Agent.

   i) Huddle – Proprietary customer relationship management program used to track communication with Leads and record Transactions.

2) Engagement.

   a) The Company hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program. This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.

   b) As a participant in the Program, Agent will receive Referrals from the Company that were derived from a Website for potential clients interested in purchasing, selling or leasing real estate.

   c) Upon mutual agreement between Agent and the Company, Agent may be displayed as a Featured Agent for one or more Neighborhoods or Properties on the Websites.

   d) In consideration for the foregoing appointment into the Program, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.

   e) Agent acknowledges that the Company, in its sole discretion, may alter the Territory, Neighborhoods and/or Properties for which Agent is displayed as a Featured Agent. Agent further acknowledges that the Company may add multiple agents to a specified territory and

rotate who is displayed as a Featured Agent on its Websites.

   f) Agent acknowledges that the Company, in its sole discretion, may alter the frequency for which an Agent is displayed as a Featured Agent for a Neighborhood or Property on the Websites. The determination for the frequency an Agent is displayed as a Featured Agent is based on factors that include, but are not limited to, Agent's conversion rate of Leads to Transactions, timeliness of response to Referrals, Agent's capacity to service the Leads, timely and consistent use of Huddle, reviews of Agent's performance by past Referrals, and such other matters as the Company deems relevant in its sole discretion.

   g) Agent acknowledges that the Company, in its sole discretion, may periodically test the Agent's response and follow-up to Referrals by registering a fictional name and contact information and monitor Agent's response.

3) Term and Termination.

   a) This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.

   b) Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by the Company to Agent's Broker) via email, with proof of transmission upon request.

4) Referral Fee.

   a) Agent's Broker agrees to pay the Company a referral fee equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Associated Agents or Agent's Company for all Referrals that result in Transactions. The referral fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, referral fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that the Company reserves the right to conduct audits of documentation of customer communication and sales records in Huddle, as well as local public records, for the purpose of ensuring that all Transactions with the Company's Referrals are properly reported. The Company also reserves the right to periodically survey Referrals regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.

   b) A referral fee shall be due and payable hereunder for any Referral to Agent that results in a Transaction, whether such Transaction is from Agent, Associated Agents or a third party agent to whom Agent referred the Lead (with notice to and the written consent of the Company).

   c) Agent and Agent's Broker acknowledge this stipulation requires that multiple Referral Fees will be due to the Company for subsequent Transactions that happen with the same Referral during the term of this agreement and for any Transaction that opens escrow within two (2) years after the termination of this agreement. This includes all buyer, seller/listing and rental Transactions.

   d) The referral fee is due and payable for all Referrals that result in Transactions regardless of whether or not the Neighborhood in which the Transaction occurred or the Property for which the transaction occurred is displayed on the Websites.

   e) In the event that the Agent has a pre-existing relationship with any Referrals sent from the Company to Agent, no referral fee shall be due from Agent or Agent's Broker to the Company provided that (i) Agent was actively working with the Lead prior to receiving the Referral from the Company, and (ii) Agent, within 48 hours after the

2

Broker Initials  Agent Initials _____

*Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6648D480D5CFF

FILED DATE: 1/8/2026 10:09 AM   20241132994

Company forwards the Referral to Agent, provides documentary evidence thereof to the Company verifying that Agent corresponded with the Lead in the ninety (90) day period prior to the submission of the Referral to Agent via email, phone or personal interaction. Mass marketing, such as email blasts, newsletters, or MLS drip campaigns, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with the Lead within the last 90 days.

f) Agent will provide the Company with a copy of each executed Settlement Statement or Closing Statement or executed lease by uploading a copy of such document in PDF format into the sales record in Huddle and Agent's Broker shall submit referral fee to the Company within 5 days of closing.

5) <u>Representations, Duties and Responsibilities of the Company</u>.

a) The Company is an Illinois licensed real estate brokerage with a current and valid license.

b) The Company will display information about Neighborhoods and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed appropriate to effectively market the Neighborhoods and the Properties.

c) The Company will forward via email Leads that inquire about a Neighborhood or Property to Agent for which the Agent is displayed as a Featured Agent on a Website.

6) <u>Representations, Duties and Responsibilities of Agent</u>.

a) Agent is a licensed real estate salesperson or broker with a current and valid license in the state in which Agent practices.

b) Agent or Agent's Broker will alert the Company of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license within three (3) business days.

c) Agent shall comply with all applicable real estate licensing laws and abide by all terms of the Fair Housing Act.

d) Agent is a member in good standing of their local Multiple Listing Service (MLS) and will maintain their membership throughout the term of this Agreement.

e) Agent's products and services do not violate any applicable laws or regulations.

f) All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as an offering of service by the Company.

g) Agent will provide and update as necessary their own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background. The Company may prevent an Agent from being displayed as a Featured Agent for a Property or Neighborhood until an acceptable photograph is provided by Agent.

h) In the event that Agent provides the Company with photos, videos or virtual tours for Neighborhoods displayed on the Websites, Agent hereby grants the Company a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds the Company harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to the Company may, at the discretion of the Company, remain on the Websites after termination of this Agreement.

i) Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and consultative services to Leads on behalf of Agent. All Associated Agents shall sign Exhibit 1 of this Agreement,

return a signed copy to the Company and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and the Associated Agent's Broker is required to pay the Referral Fee to the Company in the event of a Transaction derived from a Referral. Notwithstanding the foregoing, Agent and Agent's Broker are fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of the Company.

j) Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from the Company. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker or real estate representative without notice to and written consent from the Company; provided, however, that Agent may register Leads with home-builder sales representatives in the Neighborhoods in which Agent deems the Lead may be interested in purchasing a home without the written consent of the Company.

k) Agent acknowledges that a Lead's contact information as provided on the website is the property of the Company, and that the Company may market to any Lead before, during, or after any contact with the Agent.

l) Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on Exhibit 1 of this agreement without the prior written consent of the Company. If a Lead requests information regarding a Neighborhood or Property outside the area the Agent is willing to service, the Agent will immediately notify the Company and the Lead will be referred only by the Company to another agent. No compensation will be due to the notifying Agent.

m) Agent will document all communications with all Leads via Huddle, an online customer relationship management tool, whether any such Lead is being contacted directly by Agent or an Associated Agent. Agent will make all reasonable efforts to respond to all Leads via phone within one (1) hour of the transmission of Lead information from the Company to Agent, except in situations where a Referral is received after 8pm or the Lead specifically requests not to be contacted via phone. Agent must notify Company if there is a situation whereby Agent is unable or unwilling to respond to a Lead within a timely manner, such as when agent is on vacation. Agent agrees to contact all Leads by phone and email and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other reason, Agent will ensure that one of the Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Referrals from the Company to Agent.

n) The Company requires documentation about interactions via phone calls, emails and personal interactions with the Lead via Huddle about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. The Company may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help the Company learn the status of the referred Leads.

o) Agent will notify the Company of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within twenty-four (24) hours thereof by entering the sale information in Huddle. Thereafter, Agent will notify the Company by updating Huddle with any changes to the status of the Contract as and when Agent becomes aware of such changes and

3                                              Broker Initials _____   Agent Initials _____                          *Version 1.1.17*

FILED DATE: 1/8/2026 10:09 AM   20241132994

will provide the Company a status update within twenty-four (24) hours after the Company requests same.

p) Agent will notify the Company of any cancelled Contract within twenty-four (24) hours of becoming aware of such cancellation by updating the sale record in Huddle. Such notice shall include documentation of cancellation. If any lead who cancels a Contract later consummates a Transaction with Agent or Associated Agent, a Referral Fee will be due and payable to the Company hereunder.

q) Agent recognizes that the Company has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to the Company which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referral Fees due to the Company. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of the Company. Agent acknowledges that neighborhoods.com, the neighborhoods.com logo, 55places.com, and the 55places.com logo are trademarks and the sole property of the Company and are not to be used without the express written consent of the Company. Any use is considered a license only, revocable by the Company at any time.

7) <u>Limitation of Liability</u>
a) Agent may not seek, and in no event will the Company be liable to Agent for, any indirect, special, incidental, consequential or punitive damages, however characterized, to the fullest extent the law permits this disclaimer and even if the Company has been advised of the possibility of these damages. In no event will the Company's cumulative aggregate liability, under any theory and irrespective of fault or negligence, exceed $100.

8) <u>Indemnification</u>
a) To the maximum extent permitted by law, Agent shall indemnify and hold the Company and its affiliates, subsidiaries, representatives, agents, managers, and employees harmless from and against any liabilities, losses, damages, claims, demands, actions and rights of action (including reasonable attorneys' and paralegals' fees and costs) related to (a) the actions of Agent outside the scope of this Agreement, (b) the gross negligence or willful misconduct of Agent, (c) any third-party claims alleging a breach of the third party's intellectual property rights as a result of Agent's actions or omissions, (d) Agent's breach of any representation, warranty or obligation stated in this Agreement, and (e) any action brought against Company by any government agency due to the actions or inactions of Agent. Agent shall fully cooperate as reasonably required in the defense of any claim.

9) <u>Remedies</u>
a) Agent agrees that if the Company seeks to enforce this Agreement by injunction, specific performance, or other equitable relief, the Company will not be required to post a bond or prove actual damages.

10) <u>Miscellaneous</u>.
a) This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b) This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c) This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d) This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e) If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f) Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



4     Broker Initials \_\_\_\_\_ Agent Initials \_\_\_\_\_     *Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FE-9384-6448D480D5CFE

**Exhibit 1: Associated Agents**

Agent and Agent's Broker hereby acknowledge and the Company hereby accepts that the following Associated Agents are permitted to interact with Referrals received from the Company and its Websites. The following Associated Agents acknowledge they have read this agreement in its entirety and will abide by all terms set forth in this agreement.

_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


_____          _____
Associated Agent (Signature)                                          Date

_____
Associated Agent (Print)


**Acceptance by the Company:**

By: _John Bray_____
Authorized Sales Manager

5                                                                    *Version 1.1.17*

DocuSign Envelope ID: 106A0E52-0080-48FE-9384-6648D480D5CFE

**Exhibit 2: 55places.com Agents**

**Affiliated Website**

The Company wishes to assist visitors to 55places.com by providing links from 55places.com to an Affiliated Website created by the Company on behalf of the Agent with Property information generated via an Internet Data Exchange (IDX) feed from Agent's Multiple Listing Service (MLS). The purpose of the Affiliated Website is to direct visitors to an IDX compliant website that displays Properties for sale in Neighborhoods that are displayed on 55places.com within the Agent's Territory. The Affiliated Website created by the Company will be of a design and layout that is similar in nature to 55places.com. The Company agrees to design, build, host and manage the Affiliated Website in accordance with all IDX requirements set forth by Agent's MLS.

The Company agrees to pay all fees for IDX directly to the MLS or reimburse the Agent or Agent's Broker for costs incurred to set up and/or maintain the Affiliated Website. The Company further agrees to purchase and retain ownership of the Uniform Resource Locator (URL) for the Affiliated Website, except in instances where the Agent's MLS specifically requires ownership of the URL by Agent or Agent's Broker.

Agent agrees to allow the Company to build and maintain an Affiliated Website with a URL of http://www.[agentname]55places.com (or similar). Agent or Agent's Broker will provide access to an IDX or RETS data feed and will facilitate approval of Affiliated Website by their Local MLS board.

Agent acknowledges that Referrals obtained through the Affiliated Website are subject to the terms of this Agreement. Agent further acknowledges that Agent has the authority to dictate to the Company the design, layout and content of the Affiliated Website but that the Company may cancel this agreement if the Agent's requests do not match the website template created by the Company.

Upon termination of this Agreement, the Company will remove the contents of this website within 60 days.

**Sales Reports**

Agent agrees to supply the Company with comprehensive sales reports from the local MLS board each quarter, by the end of the first month following each quarter end, showing all transactions that took place in each Neighborhood for which the Agent has been displayed as a Featured Agent, including subject address, sales price, sale date, listing agent, and selling agent.

**Acceptance by the Company:**

By: _John Bray_
Authorized Sales Manager

By: _[signature]_
William Ness - Managing Broker

Date: 1/10/2017

**Acceptance by Agent and Agent's Broker:**

_Drew Haisley_
(Agent's signature)

_Diane Shafer_
(Agent's Broker's signature)

Date: 1/10/2017

6                                                                                          *Version 1.1.17*

FILED DATE: 1/8/2026 10:09 AM  20241132994

DocuSign Envelope ID: 106A0E52-0080-48FF-9384-6648D480D5CFE



**55places.com Partner Agent Pledge**

We are excited to have you part of the 55places.com Partner Agent Referral Program. This program is not suited for every real estate agent, but we have elected to have you join our program because we are confident you will handle our referrals with care and effectiveness that produces satisfied customers and positive results for both you and 55places.com.

We believe in finding the most committed Partner Agents to join our program because we know that selecting agents who are motivated, persistent and eager means we will achieve mutual success.

As fellow real estate brokers, we believe that our Partner Agents should only pay for referrals that result in a transaction, which is why 55places.com is compensated exclusively via referral fees and not by charging up-front or monthly advertising fees. We are willing to make you a member of our program and provide you with referrals as long as you agree that while you are a member of our program you are willing to commit to the practices we have outlined below.

I, _____Drew Haisley_____, commit to the 55places.com Partner Agent Pledge
　　　　　(print your name)
and will make every effort to abide by the best practices outlined below:

Initials:

_DH_____ I will commit to a timely phone response for all referrals sent to me. I agree to make every reasonable effort to call every lead within one hour, but ideally within minutes of when they submit their request. I will follow up my initial phone call with an email in the same timeframe.

_DH_____ I will use Huddle to log follow-up and correspondence with all referrals. I agree to make every effort to update Huddle the same day that the follow-up occurred, and no later than 24 hours from lead inquiry.

_DH_____ I agree to enter all transactions – including buyer, seller and rental contracts – for any lead I receive from 55places.com within 24 hours of the contract being executed. This includes subsequent sales for the same lead, including a listing and a buying transaction, as well as future transactions for the life of the agreement between you and 55places.com.

_DH_____ I will maintain in-depth knowledge of the neighborhoods for which I am displayed as a real estate expert on 55places.com. I will make every effort to provide detailed information and answer questions regarding neighborhoods and properties to the referrals provided to me by 55places.com.

_DH_____ I am responsible for follow up with the referrals I receive and I will not forward or re-refer leads provided to me from 55places.com to any other agent except the Associated Agents specified in the Referral Agreement. I also acknowledge that I will inform 55places.com if one of the referrals they provided me is interested in purchasing or selling a home in a location for which I am unwilling or unable to provide service.

_DH_____ I will act with professionalism, diligence and care for all referrals provided to me by 55places.com. I will act ethically and provide great customer service to referrals from 55places.com and I will not act in a manner that tarnishes the 55places.com brand.

_DH_____ I acknowledge that the conversion rate of my leads to transactions is a highly important metric and I will make all reasonable efforts to ensure my conversion rate is at the highest possible level.

DocuSigned by:

_Drew Haisley_____　　　　　1/10/2017
___E8313256D5B0444...____　　　　　　　　　　　_____
Agent Signature　　　　　　　　　　　　　　　　　　Date

*55places.com is owned and operated by Neighborhoods.com, LLC – an Illinois Licensed Broker*

FILED DATE: 1/8/2026 10:09 AM 20241132994


55 PLACES COM

# 55 PLACES, LLC AGENT REFERRAL AGREEMENT

| REFERRING BROKER INFORMATION | RECEIVING AGENT/BROKER INFORMATION |
|---|---|
| Managing Broker: William Ness | Agent: _Drw Haisliy Van Laanen_ |
| Sponsoring Broker: 55 Places, LLC | Agent's Broker: _Diane Shafer_ |
| Company: 55 Places, LLC | Agent's Company: _Shafer Real Estate_ |
| Address: 1525 W Homer, Suite 302 | Address: _121 Montezuma St_ |
| Chicago, IL 60642 | _Rio Vista CA 94571_ |
| Phone: (773) 278-5500 | Agent Phone: _(925) 482 4556_ |
| Fax: (888) 370-2806 | Agent Fax: _(707) 375 1888_ |
| Email: Bill.Ness@ 55Places.com | Agent Email: _drewhaisliy@Frontier.com_ |
| Tax ID #: 68-0653419 | Agent RE License #: _00997350_ |
| Lic. # /state: 475.117159 (Illinois) | Broker Phone: _(707) 328-5277_ |
| | Broker Email: _dianeshafer@frontiernet.net_ |
| | Broker RE License #: _01390213_ |
| | Company Tax ID: _80-0180507_ |

**Referral Fee:** Referral fee = 30% x (Commission + Bonuses)

This **REFERRAL AGREEMENT** ("Agreement") is entered into by and between the Referring Broker identified above, an Illinois licensed real estate broker (hereinafter "55 Places"), and the Receiving Broker identified above, a(n) _CALIFORNIA_ (State) licensed real estate broker and Receiving Agent identified above (hereinafter "Agent"), effective on that date which is the latter of the respective dates set forth below the signatures on this page ("Effective Date").

55 Places has developed an informational and interactive website commonly known as 55Places.com and Affiliated Websites (collectively, "Websites" and each, a "Website") which showcase and provide information for residential real estate developments, properties, communities, neighborhoods and subdivisions that appeal to older adults and senior-aged individuals.

55 Places desires to appoint Agent as a participant in the 55 Places Agent Referral Program (the "Program") and Agent desires to accept such appointment upon the terms and conditions set forth in this Agreement. **The undersigned have read and agree to the General Terms and Conditions attached hereto and made a part hereof.**

**Acceptance by 55 Places:**

55 Places LLC, an Illinois
Limited Liability Company

By: _____
William G. Ness, Managing Broker

Date: _11/5_, 20_13_

**Acceptance by Agent and Agent's Broker:**

_Drw Haisliy Van Laanen_
(Agent's signature)

_Diane Shafer_
(Agent's Broker's signature)

Date: _____, 20___

FILED DATE: 1/8/2026 10:09 AM 20241132994

## General Terms and Conditions

1) **Definition of Terms.**
   a) Lead – Any person or entity who, directly or on behalf of another person or entity, (i) accesses a Website, (ii) accesses information pertaining to one or more Properties or Communities, and (A) submits a request for additional information pertaining to Properties or Communities, (B) submits personal contact information or personal contact information on behalf of another person or entity on a Website, and/or (C) contacts Agent directly as a result of finding Agent on a Website.
   b) Affiliated Website – A website created by or for 55 Places used for the purpose of displaying property listings, or other related information.
   c) Referral Agent – Any agent who is authorized to be a part of the 55 Places Agent Referral Program.
   d) Communities – Residential real estate developments, neighborhoods, subdivisions, areas, retirement communities, active adult communities and age-restricted communities displayed on the Websites.
   e) Properties – Real estate for sale or rent, which may be displayed on the Websites.
   f) Transaction – A Lead referral via a Website, via telephone or by any other means from 55 Places to Referral Agent and/or Associated Agents that results in a closed real estate transaction or in an executed rental agreement.
   g) Associated Agents – Agent's teammates and fellow real estate agents and brokers (named on page 4 of this agreement) who are licensed real estate salespersons, brokers, or assistants working in conjunction with Agent who are authorized by 55 Places to respond to, communicate with and/or provide other real estate and consultative services to Leads.
   h) Agent Portal – Proprietary customer relationship management program used to track communication with leads and prospects and record Transactions.

2) **Engagement.**
   a) 55 Places hereby appoints Agent, and Agent hereby accepts such appointment, on a non-exclusive basis to be a participant in the Program. This is a referral agreement only and in no way shall be considered an employment, partnership, franchise or joint venture agreement.
   b) As a Referral Agent, Agent will receive Lead information from a website for potential clients interested in purchasing, selling or leasing real estate.
   c) Upon mutual agreement between Agent and 55 Places, Agent may be displayed as a community expert for one or more Communities on the Websites.
   d) In consideration for the foregoing appointment as a Partner Agent, Agent agrees to perform Agent's duties and obligations hereunder in a diligent, efficient, competent and skillful manner in full compliance with all laws and regulations applicable thereto and commensurate with the highest professional standards. Agent will faithfully, honestly and diligently devote such working time and attention to performing Agent's duties and obligations hereunder as necessary to accomplish the objectives set forth herein.
   e) Agent acknowledges that 55 Places, in its sole discretion, may remove or add Communities or alter the Partner Agent displayed on a Community from time to time, rotate and/or remove a Referral Agent displayed on a Community.
   f) Agent acknowledges that 55 Places, in its sole discretion, may periodically test the Agent's response and follow-up to Leads by registering a fictional name and contact information.

3) **Term and Termination.**
   a) This Agreement commences on the Effective Date and remains in effect until terminated by either party or revised by mutual consent.
   b) Either party may terminate this Agreement at any time for any reason effective upon written notice to the other party (or notice by 55 Places to Agent's Broker) via facsimile or email, with proof of transmission upon request.

4) **Referral Fee.**
   a) Agent's Broker agrees to pay 55 Places a referral fee equal to Thirty Percent (30%) of the gross referred side commission ("Commission") plus cash bonuses and/or other cash compensation, if any ("Bonuses"), received by Agent's Broker, Agent, Agent's Partner or Agent's Company for all Leads that result in Transactions. The referral fee computation shall be made prior to any split or any allocation of any payment between Agent and any other party (including, without limitation, referral fee payments to Leads who are licensed real estate agents) for all Transactions. Agent and Agent's Broker acknowledge that 55 Places reserves the right to conduct audits of documentation of customer communication and sales records in the Agent Portal, as well as local public records, for the purpose of ensuring that all Transactions with 55 Places' Leads are properly reported. 55 Places also reserves the right to periodically survey Leads regarding their experience with the Agent, and that information obtained may be considered in any decision regarding the continuation, termination, or renewal of this Agreement.
   b) A referral fee shall be due and payable hereunder for any Lead to Agent that results in a Transaction, whether such Transaction is from Agent, Agent's Partner or a third party agent to whom Agent referred the Lead (with notice to and the written consent of 55 Places).
   c) The referral fee is due and payable for all Leads that result in Transactions that open escrow during the term of this Agreement and for a period of two (2) years after the termination of this Agreement.
   d) The referral fee is due and payable for all Leads that result in Transactions regardless of whether or not the Community in which the Transaction occurred is displayed on the Websites.
   e) No referral fee shall be due and payable with regard to any Transaction with any Lead that was, at the time the Lead was submitted to Agent from 55 Places, already a client or a pre-existing prospect of Agent if (i) Agent was actively working with the Lead prior to receiving the Lead from 55 Places, and (ii) Agent, within 48 hours after 55 Places forwards the Lead to Agent, provides documentary evidence thereof to 55 Places verifying that Agent corresponded with Lead in the ninety (90) day period prior to the submission of the Lead to Agent via email, phone or personal interaction. Mass marketing, such as email blasts or newsletters, do not constitute correspondence for purposes of proving pre-existing client status. Examples of documentary evidence include a screenshot of a lead management system or email verifying direct communication with a Lead within the last 90 days.
   f) Agent will provide 55 Places with a copy of each executed HUD-1 Settlement Statement, Closing Statement (if no HUD-1 Settlement Statement was issued in connection with the Transaction) or executed lease by uploading a copy of such document in .pdf format into the Agent Portal and shall submit referral fee to 55 Places within 5 days of closing.

5) **Representations, Duties and Responsibilities of 55 Places.**
   a) 55 Places is an Illinois licensed real estate brokerage with a current and valid license.
   b) 55 Places will display information about Communities and Properties on the Websites including, without limitation, description copy, photographs, diagrams, floor plans, virtual tours, video and other information deemed



2     Broker Initials _____ Agent Initials _____

appropriate to effectively market the Communities and the Properties.

c) 55 Places will forward to Agent Leads that inquire about a Community or Property with which the Referral Agent is displayed as a Community expert on a Website at the time of inquiry.

6) Representations, Duties and Responsibilities of Agent.

a) Agent is a licensed real estate salesperson or broker with a current and valid license in the state in which agent practices.

b) Agent will promptly alert 55 Places of any changes to the status of Agent's license including, without limitation, revocation, suspension or expiration of license.

c) Agent shall comply with all applicable real estate licensing laws.

d) Agent is a member in good standing of their local Multiple Listing Service (MLS) and will maintain their membership throughout the term of this Agreement.

e) Agent's products and services do not violate any applicable laws or regulations.

f) All information Agent submits to customers about Agent's services is the responsibility of Agent and not to be construed as 55 Places' offering of service.

g) Agent will provide and update as necessary their own current information including, but not limited to: name and accurate contact information, company (brokerage) contact and license information and logos, and a professional, current headshot photograph of Agent on neutral background.

h) Agent agrees to allow 55 Places to build and maintain an Affiliated Website known as http://www.[agentname]55places.com (or similar), using the Agent's likeness and contact information, for the purpose of displaying homes listed for sale on Affiliated Websites. Agent or Agent's Broker will provide access to an Internet Data Exchange (IDX) or RETS data feed, including any associated costs or setup fees necessary to obtain feed. Agent and/or Agent's Broker will facilitate approval of Affiliated Website by their Local MLS board. Agent acknowledges that Leads obtained through such Affiliated Website(s) are subject to the term of this Agreement. Agent further acknowledges that http://www.[agentname]55places.com is owned and maintained by 55 Places. 55 Places agrees to operate Affiliated Website according to any rules or guidelines required by local MLS. 55 Places retains all rights to modify the content displayed on http://www.[agentname]55places.com during and after the terms of this Agreement. Upon termination of this Agreement, 55 Places will remove the contents of this website within 60 days but will still maintain ownership rights to the URL and all intellectual property rights derived therefrom.

i) Agent will cooperate with 55 Places as necessary with regard to information pertaining to Communities for which Agent is displayed as a Community expert, as follows:

(1) General information about the Communities, including address, phone numbers, builders, number of homes and dates of construction.

(2) Real estate information for the Communities, including types of homes, home price ranges, home square footage ranges and Association fees for all home types in the Communities.

(3) A list and accurate description of all amenities within the Communities.

(4) A list of all clubs, organizations, classes and events offered within the Communities.

(5) Area and local information pertaining to other amenities, lifestyle options and other information about the area surrounding the Communities.

j) At the request of 55 Places, Agent shall provide photographs, video and/or virtual tours of the Communities for which Agent is displayed as a

Community expert including amenities, clubhouses, homes, grounds, entry monuments and/or signage and other items that are deemed necessary or desirable to convey an accurate portrayal of the Communities to Website visitors. Agent agrees to provide 55 Places with such photographs, video and/or virtual tours as allowed by Communities and/or builders adhering to the following guidelines.

i) All photographs, video and/or virtual tours supplied from Agent to 55 Places shall be proprietary to Agent and not copied from another trademarked source or websites except with the express written permission of such other sources or websites.

ii) All photographs supplied from Agent to 55 Places must be no smaller than 640 pixels wide by 426 pixels tall.

iii) Agent shall provide updates to 55 Places as information about Communities changes and/or as requested by 55 Places.

k) Agent hereby grants 55 Places a non-exclusive, royalty-free, world-wide license to display all information, photographs, video and/or virtual tours on the Websites, it being understood and agreed that Agent hereby indemnifies and holds 55 Places harmless with respect to any claims of infringement by third parties claiming rights thereto. Any information, photographs, video and/or virtual tours provided by Agent to 55 Places may, at the discretion of 55 Places, remain on the Websites after termination of this Agreement.

l) Agent may allow Associated Agents to respond to, communicate with and/or provide other real estate and consultative services to Leads on behalf of Agent. All Associated Agents shall sign a copy of this Agreement, return a signed copy to 55 Places and agree to and are bound by all the terms, provisions, conditions and restrictions of this Agreement and are required to pay the Referral Fee to 55 Places in the event of a Transaction. Notwithstanding the foregoing, Agent is fully responsible for insuring compliance with this Agreement by Associated Agents. Agent may not add Associated Agents without prior written consent of 55 Places.

m) Only Agent and Associated Agents may respond to, communicate with and/or interact with Leads referred to Agent from 55 Places. Agent may not in any way re-transmit, send or otherwise refer a Lead or any information regarding a Lead to any other agent, broker, real estate representative or 55 Places Referral Agent without notice to and written consent from 55 Places; provided, however, that Agent may register Leads with home-builder sales representatives in the Communities in which Agent deems the Lead may be interested without the written consent of 55 Places.

n) Agent acknowledges that a Lead's contact information as provided on the website is owned by 55 Places, and that the company may market to any Lead before, during, or after any contact with the Agent.

o) Agent will not re-refer a Lead to another agent or provide Lead information to any agent not listed on page 4 of this agreement without the prior written consent of 55 Places. If a Lead requests information regarding a community outside the Agent's primary business area, the Agent will immediately notify 55 Places and the Lead will be referred only by 55 Places to another agent. No compensation will be due to the notifying Referral Agent.

p) Agent will document all communications with all Leads via an online Customer Relationship Management tool (Agent Portal), whether any such Lead is being handled directly by Agent or an Associated Agent. In addition, Agent will respond to all Leads within 24 hours of registration by phone and email, and will continue to attempt contact for a period of 30 days. Once contact is made, Agent will continue follow up correspondence with the Lead until the Lead purchases a home or asks to be removed from further communication. If Agent is unable to respond to Leads, such as during vacation or other

3    Broker Initials _____    Agent Initials _____

FILED DATE: 1/8/2026 10:09 AM 20241132994

reason, Agent will ensure that one of the above named Associated Agents responds to every Lead within the required time limit. Agent acknowledges that failure to do so may result in the cessation of more Leads from 55 Places to Agent.

q) 55 Places requires documentation about interactions via phone calls, emails and personal interactions with the Lead via the Agent Portal about the status of Leads referred to Agent including, information about conversations, emails, appointments, meetings and other forms of interaction with Leads. 55 Places may from time to time request updates regarding the status, estimated purchase timeframe and other information pertinent to help 55 Places learn the status of the referred Leads.

r) Agent will notify 55 Places of any Lead who enters into a contract to purchase, sell or lease Property or enters into a contract with a builder to construct a new home (collectively, a "Contract") within forty-eight (48) hours thereof by entering the sale information in the Agent Portal. Thereafter, Agent will notify 55 Places by updating the Agent Portal with any changes to the status of the Contract as and when Agent becomes aware of such changes and will provide 55 Places a status update within forty eight (48) hours after 55 Places requests same.

s) Agent will notify 55 Places of any cancelled Contract within forty eight (48) hours of becoming aware of such cancellation by updating the sale record in the Agent Portal. Such notice shall include documentation of cancellation. If any Lead who cancels a Contract later consummates a Transaction with Agent or Agent's Partners, a Referral Fee will be due and payable to 55 Places hereunder.

t) Agent recognizes that 55 Places has acquired and will be developing certain inventions and innovations, trade secrets, know-how, customer lists and information, and other proprietary information related to 55 Places which can be regarded as confidential and proprietary (collectively "Confidential Information"). Agent agrees that, upon termination of Agent's engagement, Agent will only use such Confidential Information as is absolutely necessary to contact Leads and pay Referrals due 55 Places. Agent further agrees that Agent will not at any time either during the term of Agent's engagement or after its termination use or disclose or authorize anyone else to use or disclose Confidential Information without the prior express written consent of 55 Places. Agent acknowledges that 55 Places, 55places.com, and the 55places.com logo are trademarks and the sole property of 55 Places and are not to be used without the express written consent of 55 Places. Any use is considered a license only, revocable by 55 Places at any time.

u) Agent and Agent's Broker agree to supply 55 Places with comprehensive sales reports from the local MLS board each quarter, by the end of the first month following each quarter end, showing all transactions that took place in each community for which the Agent has been displayed as a Community expert, including subject address, sales price, sale date, listing agent, and selling agent.

Associated Agents

_____

_____

_____

_____

7) Miscellaneous.

a) This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, estates, legal representatives, executors, members, managers, successors and assigns; provided, however, that this Agreement is an agreement for personal services and shall not be assignable by either party without the prior written consent of the other party.

b) This Agreement is the entire Agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, undertakings and agreements, written or oral, between the parties. Any amendment or supplement hereof shall not have any force or effect unless the same is in writing and duly executed by the parties hereto.

c) This Agreement shall be interpreted in accordance with and governed by the laws of the State of Illinois as such laws are applied to agreements entered into and to be performed entirely within Illinois between Illinois residents. Any litigation resulting from this Agreement shall be brought in the Federal or State Courts of Illinois, as appropriate. By executing this Agreement, the parties submit themselves to the jurisdiction of such Courts. In any action or proceeding involving the interpretation or enforcement of, or defense against, any provision of this Agreement, the prevailing party in such action or proceeding (including any appellate proceeding) shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and all costs and expenses incurred in connection with such action or proceeding.

d) This Agreement may be executed in counterparts, each or all of which shall be deemed an original copy of this Agreement.

e) If any provision of this Agreement, including, but not limited to the non-disclosure covenants, is invalid or unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in such jurisdiction and shall be liberally construed in order to effectuate the purpose and intent of this Agreement, and the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the durability or enforceability of such provision in any other jurisdiction.

f) Notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given and effective (i) when delivered personally by messenger or courier service, (ii) upon delivery when sent by facsimile or email transmission to the facsimile number or email address set forth on page one hereof (provided that a copy of the notice and proof of the transmission shall be provided upon request of the recipient), or (iii) two (2) days after being mailed by registered or certified mail, postage prepaid and return receipt requested, addressed to the address set forth on page one hereof. Facsimile numbers, email addresses and mailing addresses may be changed by written notice to the other party.



4    Broker Initials _____    Agent Initials _____

FILED DATE: 1/8/2026 10:09 AM   20241132994

EXHIBIT B

EXHIBIT B

EXHIBIT B



**ESTIMATE**

Neighborhoods.com LLC

600 W Fulton St, Ste 700
Chicago, IL 60661
(773) 278-5500

Drew Haisley/Diane Shafer - Shafer Real Estate
121 Montezuma St.
Rio Vista, CA  94571

| | |
|---|---|
| Estimate Date: | 5/2/2024 |
| Terms: | Due upon receipt |
| Due Date: | 5/2/2024 |
| Amount: | $        21,563.50 |

| Agent name | Client name | Sale information | Calculated Referral Fee* |
|---|---|---|---|
| Drew Haisley | Gene And Deidre Ko | 701 Brookside Ln, Rio Vista, CA  94571 | $        3,342.50 |
| Drew Haisley | Claudia See | 740 Turnberry Ter, Rio Vista, CA  94571 | $        2,187.50 |
| Drew Haisley | William McKenna | 621 Edgewood Dr, Rio Vista, CA  94571 | $        3,171.88 |
| Drew Haisley | Jack Nelson | 363 Clubhouse Dr, Rio Vista, CA  94571 | $        2,625.00 |
| Drew Haisley | Linda L. Wiggins | 367 Longspur Dr, Rio Vista, CA  94571 | $        3,806.25 |
| Drew Haisley | Carolyn Ulrich | 796 Turnberry Ter, Rio Vista, CA  94571 | $        2,842.88 |
| Drew Haisley | Brian Connell | 1010 Sunset Lndg, Rio Vista, CA  94571 | $        3,587.50 |
| Total | | | $        21,563.50 |
| Payments | | | $                  - |
| Amount Due: | | | $        21,563.50 |

Please make checks payable to Neighborhoods.com with invoice number and client's name or property address on the memo field of your payment.

Please send a check to:
Neighborhoods.com
P.O Box 771470
St. Louis, MO 63177-9816
United States

**\*Please note\*:**
**Referral payment amount is based on a 2.5% commission rate with a 35% referral fee.  This amount is only an estimate and can change upon receipt and verification of final ALTA.**

ACH / Wire Transfer To:
Bank name: ███████████
Account Name: Neighborhoods.com LLC
ABA / Routing No.: ██████████
███████████████

FILED DATE: 1/8/2026 10:09 AM  20241132994

Neighborhoods.com LLC

600 W Fulton St, Ste 700
Chicago, IL 60661
(773) 278-5500

**ESTIMATE**



| Brokerage name | Shafer Real Estate |
|---|---|
| Street Address | 121 Montezuma Street |
| City, State, Zip | Rio Vista, CA, 94571 |

| Invoice Date: | 11/5/25 |
|---|---|
| Terms: | Due upon receipt |
| Due Date: | 11/5/25 |
| Amount: | $ 39,390.75 |

| Agent name | Client name | Sale information | Calculated Referral Fee* |
|---|---|---|---|
| Drew Haisley | Robert V. Hardy Jr. | 200 Oakridge Way, Rio Vista, CA. 94571 | $4,025.00 |
| Diane Shafer | Janell M. Baum | 2142 Saint Andrews Dr., Rio Vista, CA. 94571 | $3,850.00 |
| Drew Haisley | Karen E. Sahmel | 251 Shearwater Dr., Rio Vista, CA. 94571 | $3,587.50 |
| Diane Shafer | Crenshaw Family Trust, Kristina Crenshaw | 309 Fairbanks Dr., Rio Vista, CA. 94571 | $2,493.75 |
| Drew Haisley | Bruce Anthony Munson | 326 Crystal Downs Dr., Rio Vista, CA. 94571 | $4,812.50 |
| Drew Haisley | Lydia Carriere | 340 Cedar Ridge Dr., Rio Vista, CA. 94571 | $3,778.25 |
| Drew Haisley | William Frand | 348 Silver Ridge Dr., Rio Vista, CA. 94571 | $4,156.25 |
| Drew Haisley | Stephen E. Gaertner | 349 Forest Highland Dr., Rio Vista, CA. 94571 | $4,165.00 |
| Drew Haisley | Karen C. Nash | 488 Crescent Dr., Rio Vista, CA. 94571 | $4,943.75 |
| Diane Shafer | William Onesta, Carolyn Onesta | 960 Saint Andrews Dr., Rio Vista, CA. 94571 | $3,578.75 |

| Total: | | | $ 39,390.75 |
|---|---|---|---|
| Payments | | | $ - |
| Amount Due: | | | $ 39,390.75 |

Please make checks payable to Neighborhoods.com with invoice number and client's name or property address on the memo field of your payment.

Please send a check to:
Neighborhoods.com
P.O Box 771470
St. Louis, MO 63177-9816
United States

**\*Please note\*:**
**Referral payment amount is based on a 2.5% commission rate with a 35% referral fee. This amount is only an estimate and can change upon receipt and verification of final ALTA.**

ACH / Wire Transfer To:
Bank name: ███████████
Account Name: Neighborhoods.com LLC
ABA / Routing No.: ██████████
Account No: ███████

FILED DATE: 1/8/2026 10:09 AM   20241132994